COMMONWEALTH *vs.* LUIGI STORTI & another.

Suffolk.    November 19, 1900. — January 2, 1901.

Present: HOLMES, C. J., KNOWLTON, BARKER, HAMMOND, & LORING, JJ.

An indictment for murder contained two counts of which one was admitted to be good. The other was drawn under St. 1899, c. 409, and was alleged by the defendant to be in contravention of Article XII. of the Bill of Rights of the Commonwealth. The two counts described the same act and so alleged. The jury found a general verdict of guilty. *Held*, that it was unnecessary to consider the constitutional question, because the general verdict was supported by the count admitted to be good.

In a trial for murder, it appeared that the murder was committed in a sleeping-room in which the defendant, the murdered man, one A. and others were passing the night, and that A. was asleep when the murder occurred. A witness for the government testified that he was called from the opposite room by A. after the murder had been committed and the defendant had fled. The defendant was not allowed to ask the witness what A. said in calling him. *Held*, that the evidence was immaterial and properly excluded.

In a trial for the murder in Boston of one native of Italy by another, evidence was admitted of a quarrel and blows between the defendant and the murdered man in Italy about two years before, followed three or four months later by threats on the defendant's part, also evidence showing a continuous state of hostility ever since. *Held*, that the evidence was properly admitted. *Held, also,* that the witness who testified to the quarrel could properly testify that he saw the deceased and the defendant in court, meaning that he saw them when on trial in Italy for the quarrel, without producing the record of that trial.

In a trial for murder it appeared, that the defendant, a foreigner with no knowledge of English, was examined when in custody at a station-house in the presence of three officers, one of whom put questions to him through an interpreter, and that the questions and answers were taken down by a stenographer; that the interpreter said to the prisoner, in substance, that whatever was said would be used in court, against him if unfavorable, or for him if favorable; that the prisoner was asked if he wished to make any statement of his own free will, and answered " Yes," and was then cautioned that everything he said might be used against him in court. The evidence was admitted as a voluntary confession. *Held*, that the presiding judges were warranted in admitting the evidence.

In a trial for murder, where the defendant had no knowledge of English, a stenographer testified to certain confessions of the defendant made through an interpreter. The defendant objected to this evidence as hearsay, on the ground that the witness merely put down what the interpreter reported instead of what the defendant said. The interpreter testified that he reported correctly. *Held*, that the evidence was admissible as the most accurate attainable.

In a trial for murder, after the presiding judges had found certain confessions admissible, the defendant asked for many rulings on the question of admissibility. *Held*, that these requests were presented too late and that the presiding judges were right in refusing on that ground to consider them.

In a trial for murder certain confessions of the defendant made in a station-house

were admitted in evidence. It appeared that the defendant, an Italian, did not speak or understand English. Evidence was offered by the defendant, that before he made the confessions in question, one of the officers said in English to another officer who was speaking with the defendant in Italian, " Tell him it will be better for him if he tells." The evidence was excluded. There was no evidence, and none was offered, that the statement was communicated to the defendant, and all the testimony was to the effect that, if such a statement was made by the officer speaking English, it was not communicated to the defendant by the officer speaking Italian. It was not shown that the statement in English was made in the hearing of the defendant. *Held*, that there was no error in the exclusion of the evidence.

In a trial for murder a witness for the government was allowed against the defendant's objection to testify in rebuttal how many bottles of beer he had drunk on the evening of the murder, evidence having been given previously on both sides on the question whether he was intoxicated. *Held*, that the admission of this testimony in rebuttal on a point already gone into on the direct examination was within the discretionary powers of the presiding judges.

INDICTMENT for murder, returned against Luigi Storti and Vincenzo Bocielli by the grand jury December 9, 1899. The defendant Bocielli was not apprehended. The defendant Storti was tried in the Superior Court, before *Bond* and *Lawton*, JJ. The case came up on appeal and bill of exceptions.

At the opening of the trial the defendant filed a motion to quash the indictment, which was overruled by the judges; and the defendant appealed from the order.

The second count of the indictment was drawn under St. 1899, c. 409, and was as follows:

" And the jurors aforesaid, for the Commonwealth of Massachusetts, on their oath aforesaid, do further present that Luigi Storti and Vincenzo Bocielli, otherwise called Vincenzo Buccilla, otherwise called Vincenzo Bucillo, did assault and beat Michele Calucci with intent to murder him, by striking him over the head with an axe, and by said assault and beating did kill and murder said Calucci.

" And the jurors aforesaid do say, that both counts in this indictment are different descriptions of the same act."

The first count was in the form in use before the passage of the statute and was admitted to be good. The verdict was general. In behalf of the defendant, it was contended, that it could not be said that the jury did not find their verdict on the second count, and that the second count was bad as not complying with the requirement of Article XII. of the Declaration of Rights of

the Constitution of the Commonwealth, that " No subject shall be held to answer for any crimes or offence, until the same is fully and plainly, substantially and formally, described to him."

By the bill of exceptions, it appeared that on the night of November 6, 1899, the two defendants, Luigi Storti and Vincenzo Bocielli, of whom Storti alone was on trial, occupied a room in a house on Charter Street in Boston with five others, one of whom was Michele Calucci, the deceased.    At an early hour of the morning of November 7 it was discovered by some of the occupants of the room that Calucci had been murdered in his bed with an axe, and that Storti and Boccielli had fled. Storti was arrested on the following day at Hudson, Massachusetts.    He, there and on the way to Boston, made incriminating statements to the officers, and later, at police headquarters in Boston, made a confession through an interpreter.

The exceptions were founded on the admission and exclusion of evidence by the judges at the trial.    The evidence thus admitted or excluded is fully described in the opinion of the court.

The jury returned a verdict of guilty of murder in the first degree; and the defendant alleged exceptions.

*P. S. Maher & C. W. Rowley*, for the defendant.

*M. J. Sughrue*, First Assistant District Attorney, & *J. D. McLaughlin*, Second Assistant District Attorney, for the Commonwealth.

HOLMES, C. J.    This is an indictment for murder upon which the defendant has been found guilty, and the case is here on exceptions and upon an appeal from the overruling of a motion to quash.    The indictment is in two counts.    It cannot be argued that the first is bad.    The second count is in the form provided by St. 1899, c. 409, and is attacked on the ground that it does not satisfy the requirements of Article XII. of the Massachusetts Bill of Rights.    Without giving any countenance to this suggestion, it is enough to say that the two counts are for the same offence, that any evidence which would justify or require a verdict of guilty on the one equally would justify or require it on the other, and that under such circumstances a general verdict is supported by the first count.    Therefore any discussion of constitutional law is unnecessary.    *Commonwealth*

v. *Nichols*, 134 Mass. 531, 535, 536.   *Commonwealth* v. *Kennedy*, 170 Mass. 18, 20.

The murder was committed in a sleeping-room in which the defendant and the murdered man were passing the night along with others. A witness for the government having testified that he was called from the opposite room by one Sarni after the murder had been committed and the defendant had fled, and having described what and whom he saw, was asked by the defendant what Sarni said. The exclusion of this evidence was excepted to. The exclusion was right. *Commonwealth* v. *James*, 99 Mass. 438, 441. The statement was pure hearsay. It did not concern a state of mind of the speaker, and therefore did not fall within the exception as to cases of that class. Moreover the state of mind of Sarni was immaterial. The state of mind of the witness at the moment when he was called was equally immaterial. Again, what Sarni said did not explain or qualify the summons in any way in which it was admissible to explain it. The summons needed no explanation, and, although admitted without objection, itself was immaterial except as merely introductory to and explanatory of the fact that the witness went to the room. The evidence amounted to no more than that in consequence of what was said the witness went to the scene of the murder. Finally, Sarni did not even see what happened, as he was asleep at the time. See further *Commonwealth* v. *Chance*, 174 Mass. 245, 251.

The next exception is to the admission of evidence of a quarrel and blows between the defendant and the murdered man in Italy about two years before, followed, three or four months later, by threats on the defendant's part. Subject to the question of its admissibility, with which we shall deal in a moment, there was evidence of statements by the defendant showing a continuous state of hostility ever since. The exception cannot be maintained. *Commonwealth* v. *Goodwin*, 14 Gray, 55. *Commonwealth* v. *Quinn*, 150 Mass. 401, 404. *Commonwealth* v. *Holmes*, 157 Mass. 233, 240. *Commonwealth* v. *Crowe*, 165 Mass. 139. One of the statements objected to in this connection was that the witness saw the deceased and the defendant in court when he testified on a former occasion. If we are to take the evidence as meaning that the two were seen by the witness

when on trial in Italy for their quarrel, the fact was not put in for the purpose of proving the event of the trial or anything else concerning it which called for a production of the Italian record, if there was one. The fact seems to have been mentioned only in the enumeration of the times that the witness had seen the parties. Even if the record had been put in, this evidence would have been proper to identify the parties.

The admission of statements made by the defendant to the officers who arrested him was excepted to, mainly on the ground that the statements were not voluntary. The judges who tried the case were warranted in finding that the statements were freely made, and whatever latitude we may use in reviewing these findings of fact, we cannot say that they were wrong. *Commonwealth* v. *Bond*, 170 Mass. 41. The first conversation was in the station-house, just after the arrest on the day following the murder. In this nothing of great importance was said. But the defendant in denying his guilt said that he never was in Boston, which of course was evidence against him. In the next, on the following day at the same place, the defendant admitted striking the deceased with an axe. So far no inducements had been held out to him, and the facts that the prisoner was in custody and was questioned by an officer are not conclusive against this evidence. On the train from Hudson, where he was arrested, to Boston, he asked the officer whether Calucci was dead, how much imprisonment they would give the defendant, and whether they would make him die. He said that Calucci and he were great enemies, and it was only a question of time, that Calucci would kill him if he did not kill Calucci, and so on, with further particulars.

The first full and extended examination was in the Boston station-house, in the presence of three officers, one of whom put questions through an interpreter, and the questions and answers were taken down by a stenographer. The interpreter was a witness at the trial, and swore that he accurately translated all that was said by the officer to the prisoner and all the answers which the prisoner made. The stenographer testified that he accurately took it all down. What seems to be the chief ground of objection to this examination is that according to his own testimony the interpreter said to the prisoner that " what would

be against him, that will be brought in court against him, or in favor, as it was." We understand this to mean in imperfect English that whatever was said would be used in court, against the defendant if unfavorable, or for him if favorable. It is hard to find an inducement to make a confession or to say things unfavorable to himself in these words. But, if it be thought that there was an inducement to speak when otherwise he might have remained silent, *Bram* v. *United States*, 168 U. S. 532, 549, 550, it is enough to say that, according to the testimony of the stenographer from his notes, the prisoner was asked if he wished to make any statement of his own free will, answered yes, and then was cautioned simply that everything he said might be used against him in court. This is confirmed by other evidence, and, to say the least, the presiding judges were warranted in taking it as the true account.

An objection was taken to the stenographer's evidence on the ground that it was hearsay, as he merely put down what the interpreter reported. But without seeking for further possible answers, it is enough to repeat that the interpreter testified that he reported correctly. See *Commonwealth* v. *Vose*, 157 Mass. 393. It would be refining too much and not in the direction of accuracy to say that the confessions, although taken down in their English translation, should have been proved in Italian and then translated before the jury. The English was the most accurate evidence attainable at the time of the trial. *Camerlin* v. *Palmer Co.* 10 Allen, 539, 541.

After the judges had found that the confessions were admissible, the defendant asked for a string of rulings, largely platitudes, on the question of admissibility. These were presented too late, and the court was quite right in refusing on that ground to consider them.

The only exception which causes hesitation on our part is to the exclusion of evidence that, at the talk in the Hudson station-house, Rooney, one of the officers, said in English to Rosatto, another, who was speaking with the prisoner in Italian, " Tell him it will be better for him if he tells." But it appears that the defendant did not speak or understand English, and not only was there no evidence that such a suggestion was communicated to the prisoner, but all the testimony was that it was

not communicated, if such a statement was made. It did not even appear that Rooney spoke in the prisoner's hearing.

A witness for the government was allowed to testify in rebuttal how many bottles of beer he had drunk on the evening of the murder. Evidence having been gone into previously by both sides on the question of his sobriety, there is nothing to show that the court exceeded its discretionary powers. *Commonwealth* v. *Meaney*, 151 Mass. 55.

> *Decree overruling motion to quash affirmed; exceptions overruled.*