*In re* COBURN AND GLOCHESKI.

1. EVIDENCE—INTERPRETER—AGENT TO CONVERSE.

An interpreter may be made an agent to converse, and then his translation is receivable as an agent's admission without calling him to the stand.

2. SAME—ATTORNEY AND CLIENT—DISBARMENT PROCEEDINGS.

In disbarment proceedings, the testimony of witnesses as to statements of defendants made to them through an interpreter, at the time of the alleged misconduct, *held*, admissible.

3. CERTIORARI—APPEAL AND ERROR—WEIGHT OF EVIDENCE—REVIEW.

On certiorari to review disbarment proceedings, where there was evidence of defendants' misconduct, this court will

---

On admissibility of evidence given through an interpreter, see note in 17 L. R. A. 813.

not decide, as a question of law, that the evidence was not clear and convincing; that question being clearly within the province of the trial court.

4. ATTORNEY AND CLIENT — DISBARMENT PROCEEDINGS — TRIAL — SUBSEQUENT ACTS—OPEN TO INQUIRY.

A letter introduced in evidence, written by one of the defendants in disbarment proceedings to the complaining witnesses subsequent to the misconduct charged, bearing upon defendants' good faith, even if mailed (which the court ruled was not proven), *held*, insufficient to justify defendants' contention that the proceedings should be dismissed, since an act subsequent to the misconduct complained of would not preclude subsequent inquiry into their conduct.

Certiorari to Kent; Vanderwerp, J., presiding. Submitted June 12, 1919. (Docket No. 16.) Decided October 6, 1919.

Petition by Leon W. Harrington and Harold W. Bryant, *amici curiæ*, for the disbarment of Corie C. Coburn and Roman F. Glocheski. From an order granting the petition, defendants bring certiorari. Affirmed.

*Smedley & Linsey*, for appellants.

*Leon W. Harrington* and *Harold W. Bryant, in pro. per.*

STONE, J. This is a proceeding for the disbarment of Corie C. Coburn and Roman F. Glocheski, who for some years have been members of the bar in the courts of this State. The proceeding was instituted at the instance and on the recommendation of the Grand Rapids Bar Association, and was conducted in the circuit court for the county of Kent. That court appointed two members of the bar as friends of the court to make, prefer and prosecute the charges. The petition of the friends of the court is fully set forth

in the record. That part which is material here, after stating that the respondents were members of the bar of this State, and practicing attorneys at law and in chancery in the courts thereof, alleges that on June 7, 1917, one John Moses of the city of Grand Rapids commenced an action by writ of *capias ad respondendum* for damages for an assault and battery alleged to have been committed on him by Ciorba Mikleuis and Popa Ilis jointly, both of said city, and in said writ the *ad damnum* clause was the sum of $1,000; that thereupon and on the same day, said Mikleuis and Ilis were arrested by a deputy sheriff of said county and lodged in the county jail thereof, their bail having been fixed by a circuit judge at the sum of $200 each; that said respondent Glocheski learned of such arrest, through some third party unknown to the petitioners, and visited Mikleuis and Ilis in said jail and was employed as their attorney in said action; that said respondent then and there discovered that said Ilis had certain currency upon his person, and was also the owner of a large sum of money, to wit, $511, and that said respondent Glocheski thereupon accepted a payment of $10 from said Ilis for legal services to be rendered to said Ilis and Mikleuis, and then and there made an arrangement with the sheriff, whereby a cash deposit of $400 was made with said sheriff in lieu of a bail bond, and thereupon said Ilis and Mikleuis were released from said imprisonment, and accompanied said respondent, who advised them to come to his office on the following morning; that in the forenoon of the following day the respondent Coburn, having been employed to assist the other respondent in said case, and claiming to represent said Ilis and Mikleuis, negotiated a settlement, with the attorney for said Moses, of the said action against said Ilis and Mikleuis, and that it was then and there agreed by and between said respondent Coburn and

said attorney for said Moses that the sum of $100 should be paid in full settlement of all claims then existing of said Moses against said Ilis and Mikleuis, and that it was as a part of the same consideration also agreed that said action would be dismissed without costs; and that shortly thereafter, and on the same day, said respondent Glocheski called at the office of said attorney for said Moses, paid the said sum of $100 and was then and there given a full and complete release of said cause of action, duly executed by said Moses, and that a stipulation was then and there entered into between said attorney for Moses and said respondent Glocheski, by the terms of which the said action was to be dismissed without costs; that on said 8th day of June said respondents entered into a joint conference with said Ilis and Mikleuis, and, while acting as their attorneys, assumed to advise said Ilis and Mikleuis of their rights and duties, and to give them legal counsel as to their course of procedure in and about said action and, while acting as such attorneys, made, in substance, the following false and fraudulent representations to said Ilis and Mikleuis in order to induce them to pay to said respondents the sum of $600:

"(*a*) That said Ilis and Mikleuis were liable on account of said action to be fined by said circuit court the full sum of $1,000, unless they procured and paid to said Glocheski and Coburn the said sum of $600.

"(*b*) That said Ilis and Mikleuis would be immediately imprisoned, unless they paid said sum to said Coburn and Glocheski, and would be obliged to return to jail at once.

"(*c*) That said sum of $600 was necessary in order to prevent said Ilis and Mikleuis from either being fined the full sum of $1,000, or immediately return to jail.

"(*d*) That they, the said Coburn and Glocheski, were negotiating directly with the said court, and that the said sum of $600 was required by said court to be

paid in order that the matter might be settled, and the said Ilis and Mikleuis obtain their freedom. And that said respondents at the same time, then and there knowingly, wilfully and fraudulently concealed from said Ilis and Mikleuis the following facts, which were then well known to said respondents:

"(a) That the entire matter could be adjusted and settled, and the case dismissed for the sum of $100.

"(b) That the said cause of action had, prior to that time, been compromised, adjusted and released, and a stipulation for the dismissal thereof without costs entered into, all upon payment of the full sum of $100 to the attorney for said Moses.

"(c) That the said Ilis and Mikleuis were not liable unless, and until after a trial of the said cause of action, a judgment should be rendered against them either for fines, damages, penalties or imprisonment.

"(d) That the matter was one which was not a necessary or customary subject of negotiation directly with said court, and was such that it could be entirely adjusted with the said Moses and his attorney.

"(e) That the said respondents were about to appropriate to themselves $500 of the said $600 so to be paid. That thereupon, and on the same day, the said Ilis and Mikleuis, believing and relying in good faith, upon the said representations of said respondents, and in order to be relieved of the supposed necessity of returning to jail or suffering a fine, procured and paid the said sum of $600 to the said respondents, of which said sum of $600, $100 was properly applicable to the settlement and adjustment of said cause of action, and $500 thereof, in breach of their fiduciary relation to their said clients, was by the said respondents wrongfully and fraudulently appropriated to their own use."

That said Ilis and Mikleuis are Roumanians, and are unfamiliar with the English language, and with the customs and laws of this State and country, and relied wholly upon the advice and counsel given to them by said respondents as their attorneys, and paid said sum of money, believing the said false representations, and the necessity for such payment.

That said acts and doings of said respondents constitute gross misconduct upon their part in the practice of the profession of law, for which misconduct both should be disbarred from the practice of said profession in this State, and such disbarment was prayed for.

Upon the filing of such petition, an order was duly entered requiring the respondents to appear and answer, and a certified copy of the petition was duly served upon each of said respondents. Each of the respondents answered said petition, specifically denying all fraud and fraudulent representations charged therein. Both answers admit that in the forenoon of June 8, 1917, it was agreed that the sum of $100 should be paid in full settlement of all claims then existing of said Moses against said Ilis and Mikleuis, which should be in full of all costs, and everything connected with said case, and that on the same day said respondent Glocheski called at the office of the attorney of said Moses and paid the said sum, and that a stipulation was then entered into dismissing said cause. But it was denied that such settlement was agreed upon, or made until *after* said Ilis and Mikleuis had left the offices of respondents and had gone with respondent Glocheski to secure the funds to pay whatever might be demanded by the attorney for said Moses, "provided the same did not exceed the sum of $600." The exact time of the settlement was a disputed question.

A lengthy hearing was had upon the issue made and a large amount of testimony was taken. Upon the hearing it appeared that at the first meeting between respondent Glocheski and Mikleuis and Ilis the latter had been directed to bring with them an interpreter at the meeting to be held June 8th at Glocheski's office; and that an interpreter attended and acted as such at that meeting. The right of Ilis and

Mikleuis, at the hearing, to testify to what was translated to them through such interpreter was objected to by respondents, and the ruling admitting such testimony is one of the errors claimed by respondents here.

After a full hearing in the circuit court, the court found as follows as stated in the opinion filed:

"From the foregoing, it will be seen that I am of the opinion that a clear case has been made against the respondents, established by proof, so far as the first charge in the petition is concerned, that is, the Ilis and Mikleuis charge. For this reason I am of the opinion, and I find that the respondents Corie C. Coburn and Roman F. Glocheski, have committed acts and doings which constitute gross misconduct in the practice of the profession of law, for which misconduct, the said Coburn and the said Glocheski should be disbarred in the future from the practice of their profession in this State."

An order or decree of disbarment was accordingly entered, in accordance with the provisions of section 12064, 3 Comp. Laws 1915. The respondents thereafter applied to this court for a writ of certiorari to review the proceedings and judgment, which writ was granted.

In this court it is stated by counsel for respondents that the propositions involved are the following:

(1) That the testimony of Ilis and Mikleuis was incompetent.

(2) That the testimony and record do not show that petitioners have sustained their charges by clear and convincing proof, as matter of law, and that an order of disbarment ought not to have been made.

(3) That the court should have found that respondent Coburn wrote and mailed a letter to Ciorba Mikleuis, as claimed by respondents, and that, therefore, an order of disbarment ought not to have been made.

1. It is urged in argument by counsel that as Ilis and Mikleuis could only converse with respondents

through an interpreter, their testimony was hearsay, and was immaterial and incompetent, and the following is quoted from Wigmore on Evidence, § 668:

"Conversations through an interpreter. When A speaks with B through an interpreter, because of ignorance of B's language, A cannot of his own hearing know what B said; he depends on the interpreter's report. Here no exception has been recognized to the general rule (though it might well have been). The witness A is allowed to testify only to what he heard from the interpreter, and the interpreter must be called to testify to what B said to him."

Also the following in subdivision 3, section 812:

"A person conversing with a third person through an interpreter is not qualified to testify to the other person's statements, because he knows them only through the hearsay of the interpreter. Ordinarily, therefore, the third person's words cannot be proved by anyone except the interpreter himself."

Also section 1810 of the same author.

The following cases are also cited by counsel for respondents: *Diener* v. *Diener,* 5 Wis. 483, 527; *People* v. *Lee Fat,* 54 Cal. 527; *People* v. *Ah Yute,* 56 Cal. 119; *State* v. *Noyes,* 36 Conn. 80.

The following appears in respondents' brief:

"Ilis and Mikleuis were instructed to return to the office of Mr. Glocheski the following morning and to bring with them an interpreter, so that Mr. Glocheski could be informed as to the defense of Ilis and Mikleuis, and their wishes in the matter."

It is urged by counsel for petitioners that it cannot be disputed that the statements of respondents, and the statements of Ilis and Mikleuis, during the conference, were relevant and material, and that the real question is whether they were hearsay; that upon the state of facts as they existed, the statements of respondents made to Ilis and Mikleuis, and interpreted by the interpreter, were admissible as evidence, and

may be testified to by Ilis and Mikleuis, or any other party who was present, and heard and understood the statements; and that the decisions of the courts, as well as the language of the text-writers, support the admission of this testimony, citing Wigmore on Evidence, § 1078, subd. 6:

"An interpreter may be made an agent to converse, and then his translation is receivable as an agent's admission without calling him to the stand. But otherwise, his extra-judicial statements are excluded by the hearsay rule."

Also § 1810:

"Where a witness on the stand is asked to testify to the words of A (uttered out of court) as translated to him by M interpreting between them, the witness is not qualified by personal knowledge of A's utterances, and may not testify; the interpreter M is the only qualified witness, but if A whose utterances are to be testified to is a party opponent, then he may be regarded as having made M his agent to translate, and thus M's translations are admissions usable against A"—citing 2 Jones on Evidence (Horwitz's Edition), § 265; *Commonwealth* v. *Vose,* 157 Mass. 393 (32 N. E. 355, 17 L. R. A. 813).

In the last-cited case Knowlton, J., said:

"When two persons who speak different languages and who cannot understand each other converse through an interpreter, they adopt a mode of communication in which they assume that the interpreter is trustworthy, and which makes his language presumptively their own. Each acts upon the theory that the interpretation is correct. Each impliedly agrees that his language may be received through the interpreter. If nothing appears to show that their respective relations to the interpreter differ they may be said to constitute him their joint agent to do for both that in which they have a joint interest. * * * They cannot complain if the language of the interpreter is taken as their own by anyone who is interested in the conversation. Interpretation, under such

circumstances, is *prima facie* to be deemed correct. * * * In a case like the present, we are of opinion that either party, or a third person who hears the conversation, may testify to it as he understands it, although for his understanding of what was said by one of the parties, he is dependent on the interpretation which was a part of the conversation. The fact that a conversation was had through an interpreter affects the weight, but not the competency of the evidence."

The following cases are cited in support of the claim of petitioners: *Madau* v. *Lumber Co.*, 76 Wis. 120 (43 N. W. 1135) ; *People* v. *Randazzio*, 194 N. Y. 147 (87 N. E. 112) ; *Miller* v. *Lathrop*, 50 Minn. 91 (52 N. W. 274) ; *Sertaut* v. *Crane Co.*, 142 Ill. App. 49; *McCormicks* v. *Fuller*, 56 Iowa, 43 (8 N. W. 800) ; *Kelly* v. *Benevolent Ass'n*, 2 Cal. App. 460 (84 Pac. 321).

A reference to the cases cited by respondents' counsel will show that most of them can be readily distinguished from the instant case, in the application of the rule contended for. We are of the opinion that the weight of authority sustains the position contended for by the petitioners, and that the court did not err in overruling the objections to the testimony of Ilis and Mikleuis.

The record shows that the interpreter testified to the correctness of the translation objected to.

2. It is contended that the record does not show that petitioners sustained their charges by clear and convincing proof, as matter of law.

As we said in *Re Radford*, 168 Mich., at page 487, so we say here:

"It is well that we keep in mind the fact that this case is before us upon certiorari, under the provisions of section 10497, 3 Comp. Laws; and that it has been often held that the office of a certiorari is not to review questions of fact, but questions of law. And that in examining into the evidence the appellate court

does so, not to determine whether the probabilities preponderate one way or the other, but simply to determine whether the evidence is such that it will justify the finding as a legitimate inference from the facts proved, whether that inference would, or would not, have been drawn by the appellate tribunal. *Jackson* v. *People*, 9 Mich. 111 (77 Am. Dec. 491)."

Respondents urge this court to decide, as a proposition of law, that the evidence upon which the trial court found respondents guilty of gross misconduct was not clear and convincing. We think that whether the proofs were clear and convincing was a question of fact peculiarly within the province of the trial court, and not a question of law properly reviewable by this court on certiorari. The cases of *In re Baluss*, 28 Mich. 507, and *In re Clink*, 117 Mich. 619, from which counsel quote, were both cases originating in this court, and where this court weighed the evidence. It is sufficient to say that there was evidence to sustain the charges, and the trial court has found that such evidence was clear and convincing.

3. Finally it is urged that the court erred in failing to find that respondent Coburn wrote and mailed a letter to Mikleuis on June 9 1917. That letter was as follows:

"June 9, 1917.

"CIORBA MIKLEUIS and POPA ILIS,
    "City.
    "*Gentlemen:* The case of John Moses has been settled. One hundred dollars has been paid to his lawyers giving you a clear slate. The receipt is in the files, and any time you may want it, you can get it, or send for it. Everything is done as you requested. Kindly call at the office at your earliest convenience and oblige,
"Respectfully yours,"

There was testimony that this letter was dictated by respondent Coburn to the stenographer in the office; that it was copied and inclosed in a stamped en-

velope and addressed to the parties at their street and number. The trial court admitted the copy of the letter in evidence, but was of the opinion that the evidence of the mailing of the letter was not sufficient. Whether that ruling was correct or not is not controlling of the case. It is claimed by respondents that the sending of the letter bore upon their good faith, and that if sent, these proceedings should be dismissed.

We do not agree with counsel in this contention. It was an act subsequent to the conduct complained of, and even had it contained a promise to refund the money (which it did not) it would not preclude subsequent inquiry into the conduct of respondents. *In re Radford, supra,* at page 495.

Finding no error in the record, the judgment of the circuit court is affirmed.

BIRD, C. J., and MOORE, STEERE, BROOKE, FELLOWS, and KUHN, JJ., concurred.

The late Justice OSTRANDER took no part in this decision.