THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* CHIN SING, Appellant.

Crimes — murder in first degree — trial — evidence — sufficiency of evidence to sustain verdict of conviction — circumstance that conviction was upon doubtful circumstantial evidence to be considered in deciding whether error was of sufficient importance to require new trial — testimony of third parties as to what interpreters said defendant answered in reply to questions of police, the interpreters not having been called to testify, is hearsay and inadmissible — error may not be disregarded by this court where incompetent evidence was so material that district attorney in summation and in brief on appeal referred to it as evidence of guilt.

1. Though the evidence upon the trial of an indictment, charging the defendant with the crime of murder in the first degree, warrants the conclusion that it is sufficient to sustain the verdict of conviction and that, therefore, the latter should not be set aside as against the weight of evidence, nevertheless, where the evidence is circumstantial and there has been enough doubt about its cogency so that on the first trial of defendant the jury disagreed and on the present trial reached a verdict of conviction only after several hours of consideration, these circumstances are not to be overlooked in deciding whether an undoubted error in the conduct of the trial is of sufficient importance to require a new trial.

2. Where subsequent to the arrest of defendant, a Chinaman concededly unable to speak the English language, the police called in two other Chinamen, with the selection of whom defendant had nothing to do, and through them as interpreters proceeded to interrogate him concerning his former whereabouts and the reasons for his presence in the city where arrested, and on the trial the interpreters were not called to testify to the correctness of their interpretation, but third parties were permitted to testify that they said that defendant gave various answers to their questions, the evidence was hearsay and inadmissible.

3. Nor is this court justified in disregarding this infringement of the rules of evidence, on the theory that it could have done no substantial harm, where the incompetent evidence tended to show that defendant had guilty knowledge of the crime and was attempting to escape from its scene and one of his reported statements was strikingly in line with the People's theory that he had been employed as an agent to commit the murder with which he was charged, and this is especially so where the district attorney in his summation and again in his brief on this appeal referred, as evidence of guilt, to this incompetent, hearsay evidence.

(Argued April 1, 1926; decided May 4, 1926.)

APPEAL from a judgment of the Queens County Court, rendered June 22, 1925, upon a verdict convicting the defendant of the crime of murder in the first degree.

*Harry Kopp* and *Samuel Null* for appellant. The court erred in denying the defendant's motion to dismiss the indictment and direct a verdict of acquittal. (*People* v. *Razezicz*, 206 N. Y. 249; *People* v. *Giordano*, 213 N. Y. 575.) The court erred in allowing hearsay testimony in evidence. (*People* v. *Lewis*, 238 N. Y. 1; *People* v. *Van Aken*, 217 N. Y. 532.)

*Richard S. Newcombe*, District Attorney (*Thomas F. Thornton* of counsel), for respondent. No error was committed in allowing the police officers to testify to statements made by the defendant through interpreters. (*Grocz* v. *Delaware & Hudson Co.*, 174 App. Div. 505; *Wright* v. *Maseras*, 56 Barb. 521; Wigmore on Ev. 1076, § 668; *Camerlin* v. *Palmer Co.*, 92 Mass. [10 Allen] 539;

*Kelly* v. *Ning Yung Benev. Assn.*, 2 Cal. App. 460; *Nadau* v. *White River Lumber Co.*, 76 Wis. 120.)

HISCOCK, Ch. J.    The defendant, a Chinaman, has been convicted of murder in the first degree because, as found by the jury, he killed his employer, another Chinaman, at the village of Corona, Long Island, early in the morning of October 14, 1924.    It has been the theory of the People that he was hired to commit this murder by a Chinese Tong which was then engaged in warfare with another Tong to which the deceased belonged.

We do not deem it necessary to give a general summary of the People's evidence.    We have reached the conclusion that it was sufficient to sustain the verdict of the jury and that, therefore, the latter should not be set aside as against the weight of evidence.    Nevertheless, as an introduction to the consideration of the error which in our opinion requires a reversal of the judgment, it is to be borne in mind that the evidence against defendant is circumstantial and that there has been enough doubt about its cogency so that on the first trial of defendant the jury disagreed and on the present trial reached a verdict of conviction only after several hours of consideration.    These circumstances are not to be overlooked in deciding whether an undoubted error in the conduct of the trial is of sufficient importance to require a new trial. We shall simply summarize so much of the evidence as presents the error to which we have referred.

At a comparatively early hour in the morning after the night when the murder is claimed to have been committed the defendant appeared on the streets of Yonkers, which was a distance of two or three hours of travel from the place where the murder was committed.    There was something about his appearance which attracted the attention of a police officer and he was placed under observation and interrogation.    Concededly he is not able to speak the English language but the officer under-

stood him to say something about having been employed in a laundry not far away and investigation of this supposed information disclosed that it was false. Subsequently the police called in two Chinamen and through them as interpreters proceeded to interrogate defendant concerning his former whereabouts and the reasons for his presence in Yonkers. Defendant had nothing to do with the selection of these men nor did he even know, so far as the record shows, that what he had said to them was to be communicated to the police or to others. On the trial, witnesses were allowed to testify that the interpreters said that the defendant gave various answers to their questions relative to his former residence or employment and accounting for his presence in Yonkers which were false and amongst the latter answers was one to the effect that he had come to Yonkers to escape from a Chinese Tong war. The Chinamen who made this purported interpretation of their questions and defendant's answers were not called to testify to the correctness of their interpretation and the evidence of third parties, without such authentication, was admitted over proper objections and exceptions that the evidence was hearsay and inadmissible.

We think that it was so clearly so as not to permit any serious discussion of the question. The People have cited various authorities which are claimed to sustain the admission of this evidence but they entirely fail so to do. Of course the evidence was hearsay (*People* v. *Lewis*, 238 N. Y. 1) and with two possible exceptions the only cases cited by the People to sustain the admission of such evidence are cases where the interpreter had been selected by common consent of the parties endeavoring to converse or by the party against whom the statements of the interpreter were offered in evidence and in such cases it was naturally held that the party against whom the statements were offered in evidence had made the interpreter his agent and, therefore, within the ordinary

rules of principal and agent was bound by his statements which could be proved by a third party. As has been pointed out that is not at all this case. (*Commonwealth v. Vose,* 157 Mass. 393; *Meacham v. State,* 45 Fla. 71; *Nadau v. White River Lumber Co.,* 76 Wis. 120; *McCormicks v. Fuller & Williams,* 56 Iowa, 43.) In the other cases cited by respondent the interpreter had verified the correctness of his interpretation and the discussion turned on the question whether even under these circumstances the evidence was so far hearsay that it could not be allowed, and the decisions in overruling this contention did not uphold the other one that a third party could give evidence of the statements of the interpreter without any verification of the correctness of his interpretation. (*People v. Randazzio,* 194 N. Y. 147; *Guan Lee v. U. S.,* 198 Fed. Rep. 596; *Matter of Coburn,* 207 Mich. 350; *Commonwealth v. Storti,* 177 Mass. 339; *State v. Noyes,* 36 Conn. 80; Wigmore on Evidence, vol. 1, section 668; vol. 2, section 812; vol. 3, sections 1669 and 1810.) If the cases of *Grocz v. D. & H. Company* (174 App. Div. 505) and *Blazinski v. Perkins* (77 Wis. 9) are to be interpreted as taking a different view we are unable to accept it.

The question then survives whether we would be justified in disregarding this conspicuous infringement of the rules of evidence on the theory that it could have done no substantial harm. We do not feel willing to adopt that conclusion.

There is no lack of other evidence that defendant was on the streets of Yonkers on the morning after the night during which, on the People's theory, the murder was committed and if the evidence which we are considering did nothing more than tend to establish that fact it would not be of substantial consequence. But it did much more than that. The important query in connection with defendant's presence in Yonkers is the one whether he was there innocently or not. If he came to this place

somewhat distant from the scene of the murder under circumstances which indicated flight from the scene of a crime in which he had engaged, the fact was one of importance in establishing his guilt and the hearsay evidence that he gave explanations of his presence which were false tended to establish that he did have guilty knowledge of the crime and was attempting to escape from its scene with concealment of his real purpose. In addition to the other answers his reported statement that he had come to escape from a Tong war was quite strikingly in line with the People's theory that he had been employed as an agent in such a war to commit the murder with which he was charged. We can readily picture how such an alleged statement indicating entanglement in such a war would catch the minds of a jury who were being told by the prosecution that it was out of just that situation that his murder of the decedent came. Nor is our view of the importance of this evidence at all exceptional. All that we have said on that subject is confirmed by the attitude of the district attorney. In his summation he referred, as evidence of guilt, to this incompetent, hearsay evidence of defendant's false statements and reference to the Tong war, and again in his brief on this appeal does the same thing. When a district attorney so urgently relies upon incompetent evidence for the conviction of a defendant we feel quite confirmed in our opinion that it was important and not at all negligible.

· For these reasons we think that the judgment of conviction should be reversed and a new trial ordered.

Cardozo, Pound, McLaughlin, Crane and Lehman, JJ., concur; Andrews, J., not voting.

Judgment reversed, etc.