■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v MARCELLO AGRONT, Appellant. — Appeal by defendant from a judgment of the Supreme Court, Kings County (Hellenbrand, J.), rendered November 18, 1981, convicting him of murder in the second degree, manslaughter in the first degree and criminal possession of a weapon in the second degree, upon a jury verdict, and imposing sentence.

Judgment affirmed.

The following is a chronological summary of the facts adduced by the prosecution at defendant's trial.

On October 28, 1979, at about 3:00 A.M., security guard Joseph Rodriguez was approached on a Brooklyn street by two men who forcibly took his fully loaded .38 caliber revolver and its holster. The men fled in a blue car with a white top and a noisy muffler.

Subsequently, at approximately 3:30 A.M., three male Hispanics gained access into the Motion Lounge at 420 Graham Avenue in Brooklyn, where a private party was in progress. Upon being told the lounge was closed, one of the uninvited men announced a holdup and drew a gun. A scuffle ensued and the gun was discharged, fatally wounding one of the patrons. The three men ran out of the lounge and drove away in a two-tone dark car with a white top and a noisy muffler. Neither the bartender nor the two patrons of the lounge who testified at trial was able to identify defendant as the gunman.

Later that morning, at approximately 8:00 A.M., Officer Troche arrested the three occupants of a blue and white vehicle, located at a bus stop at Halsey Street and Irving Avenue in Brooklyn, Their names were Manuel Lopez, Angel Perez and Felix Colon. The vehicle had a noisy muffler and the officer removed from one of the passengers, Lopez, a black holster and a .38 caliber revolver, containing five live rounds and one empty chamber. Joseph Rodriquez identified the .38 caliber revolver and holster as the items stolen from him.

Based on the aggregate weight of the bullet fragments removed from the deceased's head, a ballistics expert was of the opinion that the bullet was a .38 caliber shell.

As a result of conversations with the three men arrested by Officer Troche, Detective Crosby conducted a search for defendant. Five and a half months after the shooting, defendant was arrested. Defendant gave an oral statement to the police, which was reduced to writing and signed by defendant, and, thereafter, another statement to an Assistant District Attorney which was videotaped.

The prosecution sought to introduce these two statements into evidence. In each statement, defendant admitted that he went to the bar on Graham Avenue with Lopez, Perez and Colon and that he had a gun in his hand that "went off" after a man at the door said "we couldn't go in" and pushed defendant. Defendant also admitted to participating in the robbery of security guard Rodriguez. Defense counsel objected to the receipt into evidence of the latter admission on the ground that the probative value of the proof of defendant's participation in an uncharged crime — the robbery of Rodriguez — would not outweigh the prejudicial danger that the jury would misuse this evidence and infer that defendant had a criminal disposition. Before admitting defendant's prior statements into evidence, the trial court redacted

any reference to Rodriguez having been chased and knocked down during the robbery, his money stolen, and defendant's receipt of a share of the monetary proceeds. After deleting these details of the robbery to reduce the prejudicial impact of this evidence, the trial court admitted defendant's statement that he was present with Lopez, Perez and Colon when the gun was taken from Rodriguez.

Before the close of the People's case, a fingerprint identification expert testified that two of the fingerprints lifted from the outside door handle to the Motion Lounge's entrance matched fingerprints taken from defendant at the time of his arrest.

Defendant took the witness stand in his defense and denied the voluntariness of his two prior statements. He claimed that he repeated what the police had told him to say in exchange for a promise that he would not go to jail. Defendant testified at trial that early in the morning on October 28, 1979 he ran into three friends, Lopez, Perez and Colon at a Brooklyn nightclub, where he had already consumed 10 to 15 drinks. Because his car had threatened to break down on the way to the club, his three friends agreed to drive defendant home. They got into Perez's blue and white car and, instead of driving defendant home, Perez drove to a discotheque, Studio 51. However, the group decided not to go into the disco. Upon returning to the car, defendant was offered whiskey, which he accepted. After a 10 or 15 minute drive, the car stopped at some location and Lopez and the Cat (Colon) got out of the car. After Lopez and Colon got back into the car, the car began to move again and defendant passed out in the automobile. He did not recall having seen Rodriguez nor did he remember going to the Motion Lounge and shooting someone. When he awoke in the car seven hours later, he left his friends in the vicinity of Halsey Street and Irving Avenue. When asked on cross-examination about the interval when the car had stopped on the way from the disco to let Lopez and Colon exit, defendant stated that he was not sure whether he also got out of the car. He did not recall seeing a man walking down the street, or being chased. Nor was he aware of any property being taken. For the sole purpose of discrediting defendant's claim of loss of memory, the trial court granted the prosecutor's request, over defendant's objection, to impeach defendant with the redacted portions of a transcript of defendant's videotaped statement.

The jury found defendant guilty of felony murder, manslaughter in the first degree and criminal possession of a weapon in the second degree.

The trial court did not err in admitting evidence of the uncharged robbery of security guard Rodriguez, which was allegedly committed by defendant and his companions a half hour before the homicide. Establishing the fact that the murder weapon was a .38 caliber revolver taken from Rodriguez during said robbery was an important link in the chain of evidence. It was entirely competent for the Assistant District Attorney to prove on his direct case that Rodriguez had been robbed of a .38 caliber revolver and that defendant had participated in the robbery for the purpose of showing defendant's connection with the murder weapon (see *People v Hill,* 198 NY 64; see, also, *People v Gines,* 36 NY2d 932; cf. *People v Green,* 35 NY2d 437). Moreover, the trial court specifically instructed the jurors on the limited purpose of this evidence and cautioned them not to infer from said evidence any propensity of criminal inclination on defendant's part.

On appeal, defendant contends that after the trial court redacted from defendant's statements the details of the robbery which exceeded the evidentiary facts necessary to accomplish the legitimate purposes of narrative and connecting defendant with the murder weapon, the prosecutor was then erroneously permitted to read the redacted material during the defendant's cross-examination. We disagree.

Where the defendant takes the witness stand and on direct examination affirmatively resorts to perjurious testimony, the prosecution may challenge the defendant's credibility by offering evidence which would be, otherwise, inadmissible on the People's case-in-chief (*People v Miles,* 23 NY2d 527, 543; *People v Kulis,* 18 NY2d 318). Here, defendant had testified at trial that he did not recall seeing Rodriguez on the morning of October 28, 1979 and that he had passed out due to intoxication shortly after the blue and white vehicle in which he was a passenger stopped for a period of time at an unknown location to allow Lopez and Colon to get out and then to get back in the car. However, five and a half months after the incident in question, defendant had furnished the police and an Assistant District Attorney with a detailed account of the robbery. As prior inconsistent statements, the redacted material was properly admitted for the purpose of impeaching defendant's credibility and discrediting his purported inability to recall at the time of trial the robbery of Rodriguez or the homicide. The redacted material was highly probative as to defendant's credibility, especially in light of his claim that the prior statements given to the police and the Assistant District Attorney were involuntarily made and the product of information the police had instructed him to repeat.

Furthermore, when the prior statements of defendant relating to the robbery of Rodriguez were introduced, the trial court instructed the jury that said evidence could not be considered for its truth, but solely as a statement in aid of assessing the witness' credibility. The trial court's prompt and proper instructions served to deter the jurors from misusing this evidence (*People v Gibbs,* 59 NY2d 930, 932; *People v Berg,* 59 NY2d 294, 299; *People v Galloway,* 54 NY2d 396, 399).

We have reviewed the defendant's other contentions and find them to be without merit. Accordingly, the judgment is affirmed. Mollen, P. J., Weinstein, Rubin and Eiber, JJ., concur.