OPINION OF THE COURT
Julius Vinik, J.
Can a witness testify to a defendant’s prior inconsistent statement which was related to the witness through an interpreter?
Defendant was indicted for murder in the second degree. On February 18, 1984 Detective Peaslee received a radio run to proceed to 300 Douglas Street, the scene of a double homicide. Arriving at the location he observed two bodies lying in the street. While at the scene he overheard a police transmission that another individual in the vicinity had also been shot and had been taken to a nearby hospital. The detective went to the hospital to interview this individual (the defendant in the instant matter). The defendant speaks Spanish and cannot communicate in English. To make conversation between the detective and the defendant possible and to interview the defendant as a complainant the detective enlisted the aid of a bilingual *32 hospital security guard, Freddie Rivera. Through the translator, the defendant told the detective that as he was walking on 4th Avenue, he saw a male black running, then heard a shot and felt pain in his wrist. After further investigation defendant was charged with the homicide. Defendant testified at trial, alleging that he was shot by unknown assailants at 300 Douglas Street, the scene of the double homicide. During cross-examination of defendant, the District Attorney asked if he had ever told Detective Peaslee that he was shot while walking on 4th Avenue, by a male black. The defendant denied ever making such statement.
In rebuttal, the District Attorney called the interpreter, Freddie Rivera, to testify. Mr. Rivera testified that although he could not recall the contents of the conversation, his translation at the hospital was accurate. The District Attorney then called the detective to testify as to what Mr. Rivera said the defendant told him.
As the detective did not speak Spanish and the defendant did not speak English, the detective’s testimony was a recounting of the interpreter’s translation of defendant’s hospital statement.
Richardson, Evidence § 200, at 176 (10th ed) defines hearsay as follows: “[A] statement made out of court, that is, not made in the course of the trial in which it is offered, is hearsay if it is offered for the truth of the fact asserted in the statement” (see also, McCormick, Evidence § 246 [2d ed 1972]).
In the instant case, the testimony was not offered to prove what occurred at the time of the incident but to show the inconsistencies in defendant’s story. Thus, Detective Peaslee’s testimony was not offered for the truth of the matter and is not hearsay (People v Agront, 104 AD2d 821, 825).
Although passing the hearsay hurdle, the admissibility of this statement must also meet other relevant evidentiary rules. The general rule is that only a person hearing the actual statement may testify to the contents thereof. (Richardson, Evidence § 502, at 488 [10th ed].) A person hearing a statement from someone other than the declarant is incompetent to testify to the contents of the statement.
This rule has also been applied to interpreters (People v Chin Sing, 242 NY 419). In the instant case, defendant’s hospital statement was made to the interpreter, Freddie Rivera, not to Detective Peaslee, who did not understand Spanish. Under the general rule, Detective Peaslee’s testimony would be inadmissible (Guadino v New York City Hous. Auth., 23 AD2d 838, 839; People v Sanchez, 125 Misc 2d 394, 398).
*33 However, there are two theories creating exceptions to this rule. The first theory is the agency theory. In Commonwealth v Vose (157 Mass 393, 32 NE 355), the agency theory was applied and the testimony of a third party as to a conversation between himself and a deceased person through an interpreter was admitted into evidence. The court found that when two people speak through an interpreter, each assumes the language is trustworthy and is their own. The interpreter is the joint agent of both parties unless their relationship to the interpreter is different (see also, Miller v Lathrop, 50 Minn 91, 52 NW 274; Kelly v Ning Yung Benevolent Assn., 2 Cal App 460, 84 P 321; Nadau v White Riv. Lbr. Co., 76 Wis 120, 43 NW 1135).
New York adopted the agency theory in the case of People v Randazzio (194 NY 147). In Randazzio, the testimony of a stenographer as to statements made by a defendant to the District Attorney was admitted into evidence. In Randazzio, as in the instant case, the interpreter was selected solely by the People. The court applied the agency theory reasoning that as the defendant made use of the interpreter’s services, the interpreter was deemed to have acted for both parties. Additionally, the court held that the finding of agency was not necessary in order for the statement to be admissible. The court found that where the use of an interpreter is necessary in order for the parties involved to communicate, this “compelling necessity” coupled with some assuredness as to the accuracy of the interpretation is enough to render the third party’s testimony admissible.
In People v Chin Sing (242 NY 419, supra), the court questioned the agency theory espoused in Randazzio (supra). In Chin Sing, the court reversed a conviction in which testimony was received from a third party to a conversation as told to him through an interpreter. As in Randazzio, the interpreter was not chosen by the defendant. It should be noted that in Chin Sing, unlike Randazzio and the case at bar, there was no testimony as to the accuracy of the translation.
Although the vitality of the agency theory in New York is questionable, there is a second theory creating an exception, i.e., the theory of “necessity”. The “necessity” exception to the general rule is applicable where (1) such testimony is necessary for the evidence to be brought before the jury, (2) the use of the interpreter was essential to the conversation, and (3) the interpreter testified as to the accuracy of the translation.
In State v Letterman (47 Ore App 1145, 616 P2d 505, affd by equally divided ct 291 Ore 3, 627 P2d 484), a police officer *34 testified to defendant’s (who was a deaf mute) statement as related to him through an interpreter. The court held that although under the facts presented an agency could be implied, the admissibility of the statement did not rest on this theory. The interpreter, who had an impressive background in her field, testified as to the accuracy of her interpretation, but could not recall what had been stated. The court affirmed, holding that the police officer’s testimony was admissible because it satisfied the two requirements common to all hearsay exceptions (1) the guarantee of reliability, and (2) the necessity for the out-of-court statement. Where reliability of the translation is assured, the hearsay nature of a statement is not decisive (United States v Santana, 503 F2d 710, cert denied 419 US 1053, cert denied sub nom. Quinones v United States, 420 US 963; Ching Lum v Lam Man Beu, 19 Hawaii 363; Commonwealth v Storti, 177 Mass 339, 58 NE 1021; Mares v State, 71 Tex Crim Rep 303, 158 SW 1130; State v Fong Loon, 29 Idaho 248, 158 P 233). Both the need for the testimony and the reliability of the translation must be shown before such testimony may be admitted (cf. People v John, 137 Cal 220, 69 P 1063).
In the case at bar, absent the use of the interpreter, communication between the defendant and Detective Peaslee was impossible. Also, as the interpreter was unable to recall the contents of the conversation, the testimony of Detective Peaslee was the only vehicle through which defendant’s hospital statement could be brought before the jury. As defendant’s statements spoke of his being a victim rather than a perpetrator, the inconsistencies of his statements were of critical import. Thus, the need for the interpreter and the detective’s testimony is apparent.
Furthermore, the reliability of the translation was assured by Mr. Rivera, who testified as to its accuracy. As Mr. Rivera was spontaneously chosen by Detective Peaslee to act as interpreter, and had no affiliation with the District Attorney’s office, there is no reason to doubt the reliability of this translation.
Under these facts, it is this court’s view that Detective Peas-lee’s testimony fits squarely within the second theory. The court adopts the necessity theory for New York (People v Arnold, 34 NY2d 548, 549).
The court next turns to the question of whether this evidence is properly admitted as rebuttal. The general rule is that a defendant cannot be impeached concerning collateral matters by producing extrinsic evidence (Richardson, Evidence § 491 [10th ed]; People v McCormick, 303 NY 403; People v Schwartzman, 24 NY2d 241). However, where the evidence sought to be introduced is relevant to an issue in the case other than credibility, it *35 is admissible (People v Schwartzman, 24 NY2d 241, supra; People v Goggins, 64 AD2d 717).
In the instant case, the testimony of Detective Peaslee, proffered in rebuttal, is relevant on the issue of defendant’s credibility and on the crucial issue as to what happened, at the time of the incident, i.e., whether he was the perpetrator who shot decedents, or whether he was another victim who was shot. Accordingly, the truthfulness of defendant’s statement is not collateral.
Accordingly, the court holds that the testimony of Detective Peaslee is admissible.