OPINION OF THE COURT
Hancock, Jr., J.
Defendant, who speaks and understands only Spanish, was convicted of two sales of drugs to an undercover police officer, who speaks and understands only English. The "buys” on which the convictions were based were made with the assistance of a paid bilingual informant who participated in setting up the transactions and acted as the interpreter for both defendant and the undercover officer. During the jury trial, the undercover officer, over objection to his testimony as inadmissible hearsay, was permitted to testify to what the informant told him in English that the informant and defendant had said to each other in Spanish. Defendant’s convictions for criminal sales of a controlled substance in the first and third degree and related drug charges were unanimously affirmed by the Appellate Division (People v Romero, 167 AD2d 923). For reasons to be explained, we conclude that the admission of the undercover officer’s testimony was error requiring a reversal and a new trial.
I
Defendant was arrested on December 29, 1987 at the North-way Motel in the Town of Salina on drug sale and possession charges arising out of transactions that occurred that day at the motel and earlier on December 17, 1987 at a supermarket *359 in Syracuse. The two transactions were controlled "buys” of cocaine which had been planned by Sergeant Tierney and other members of the Central New York Drug Enforcement Task Force for the purpose of arresting and charging defendant as a drug seller.
The December 29th arrest was the culmination of a series of meetings involving the three participants in the transactions: Reginald Tillery, Hector Davila and defendant. Tillery, a Special Agent of the United States Drug Enforcement Administration, was the undercover officer who "purchased” the drugs; Davila was the paid police informant who tipped off the police about defendant as a drug seller, set up the meetings leading to the "buys” and helped effectuate the transactions by acting as interpreter. Tillery did not know Spanish, and defendant, a native of the Dominican Republic who had come to Syracuse from Puerto Rico, did not know English. Davila, the informant, was fluent in both languages and was the sole means of communication between defendant and Tillery.
Davila’s first association with the Syracuse Police Department as an informant had occurred in the summer of 1986 when he supplied some accurate information on area drug dealers to Syracuse Police Sergeant Tierney. On December 9, 1987, Tierney, who, in the interim, had been assigned to the Central New York Drug Enforcement Task Force, talked with Davila about working for the Task Force as a paid informant. Davila agreed to do so and provided names of people allegedly involved in drug trafficking including that of defendant. It was understood that Davila was to work as an "unrestricted informant” — one who would provide information "strictly for money” and not for the purpose of obtaining a favorable disposition of pending criminal charges. Under the arrangement that was ultimately made after Davila signed a "Cooperating Individual Agreement”, Davila was to be paid for each drug deal. The amount of the payment would depend in part on the size and value of the particular drug seizure. But it would also depend, as Tillery specifically explained to Davila, on the extent to which his activities resulted "in a prosecutable case”. In addition, the Task Force agreed to help with the disposition of some traffic violations against Davila whose driving license was then suspended.
On December 12th, the Task Force, with Davila’s cooperation, commenced its investigation of defendant and the planning for his arrest. Davila, who had become acquainted with *360 defendant shortly after defendant’s arrival from Puerto Rico, agreed to try to arrange for Tillery to purchase a large quantity of drugs from defendant. The subsequent meetings between Tillery, Davila and defendant led to the two alleged sales: the first, on December 17th, in Syracuse of one ounce of cocaine; and the second, on December 29th, in Salina of one pound of cocaine — the staged "large buy” following which the preplanned arrest of defendant took place.
Davila was present at both the December 17th and 29th transactions and acted as the interpreter between Tillery and defendant in the negotiations concerning the amount, the price and other elements of the sales agreements. He also participated as go-between and interpreter in the preliminary discussions between Tillery and defendant leading up to the two transactions. Davila received $730 for his services and the police, Davila said, took care of the problems he had had with his driver’s license "in exchange for the information”.
In the People’s case, Davila testified in English as to what was said in the three-way conversations among Tillery, defendant and himself at the time of the two drug sales and in various preliminary meetings. Following Davila’s testimony, Tillery described what occurred at these same meetings. Tillery was permitted to testify to what Davila, acting as interpreter, represented to him was the English version of what Davila had said to defendant and what defendant had said in reply. Defense counsel objected to the entire line of testimony as hearsay. In overruling the objection, the court noted that Tillery’s testimony presented a "unique situation”. It cautioned the jury that it "should understand that [Tillery’s] knowledge of what the defendant allegedly said is coming through Hector Davila” and that the jury would "have to accept the credibility of Hector Davila if [it] accepted] the truth of the words allegedly spoken by [defendant]”.
The essence of the defense was an attack on the character and credibility of Davila who had engaged in drug trafficking himself and, at the time of the trial, was under pending drug charges. Davila, it was argued, had engineered the entire case for his own financial gain. Defendant testified that Davila had duped him into acting as the unwitting conduit in the transactions of December 17th and 29th between Davila and a man later identified as Tillery. According to defendant, Davila supplied the packages which were given to Tillery and Davila kept all but $50 of the $900 which Tillery gave in return on *361 the 17th, the only money which actually changed hands. During summation, defense counsel did not question the accuracy of Tillery’s account of what Davila had said to him but only whether what Davila had said was the truth.
In its memorandum affirming, the Appellate Division, citing, inter alia, People v Randazzio (194 NY 147), reasoned that "[s]ince Davila acted by common consent of the parties as their translator and agent and testified to defendant’s statements, thereby verifying his translation, the trial court correctly admitted Special Agent Tillery’s testimony of Davila’s translation of defendant’s statements to him” (167 AD2d 923-924, supra). The Appellate Division rejected defendant’s contention that his due process rights had been violated because the agreement with Davila constituted an unlawful contingent fee arrangement.
Defendant has appealed by permission and we now reverse.
II
As the trial court noted, Tillery’s testimony as to what Davila said to him concerning his discussions with defendant fits the accepted definition of hearsay: "[A] statement made out of court, that is, not made in the course of the trial * * * if it is offered for the truth of the fact asserted in the statement” (Richardson, Evidence § 200, at 176 [Prince 10th ed]). A material part of the People’s case consisted of the proof that defendant orally agreed in his conversations with Davila to make the two drug sales to Tillery. Tillery’s testimony as to what Davila said regarding the content of these conversations was offered for its truth and to prove that defendant had indeed agreed to make the sales. The People contend and the Appellate Division held, however, that the testimony was properly admitted for essentially two reasons: (1) Davila was defendant’s agent as interpreter and acted as no more than a "language conduit” for him; and (2) during the trial, Davila testified to the conversations and thereby "verified” the translation he had given to Tillery. Neither provides a basis for admitting the testimony here.
A
The rationale of the agency exception to the hearsay rule is simply that if a party has made an interpreter an agent for the purpose of translating what he or she says, the interpreter’s translations may be received as party admissions (see, 4 *362 Wigmore, Evidence § 1078 [Chadbourn rev 1972]; 6 Wigmore, op. cit., § 1810). The agency theory for the receipt of interpreted testimony has been applied recently in Federal courts (see, United States v Da Silva, 725 F2d 828, 831-832 [2d Cir 1983] [DEA Special Agent permitted to testify to interpreter’s translation of defendant’s statements made through interpreter under questioning]; accord, United States v Alvarez, 755 F2d 830, 859-860 [11th Cir 1985]). In Da Silva, the court, in approving the receipt of the testimony, noted that there may be circumstances "tending to negate an inference of agency [including] * * * a substantial possibility that the interpreter sought to shift suspicion to the accused” (725 F2d, at 832). But where "there is no motive to mislead and no reason to believe the translation is inaccurate, the agency relationship may properly be found to exist. In those circumstances the translator is no more than a 'language conduit,’ United States v. Ushakow, 474 F.2d 1244, 1245 (9th Cir. 1973), and a testimonial identity between declarant and translator brings the declarant’s admissions within Rule 801(d)(2)(C) or (D)” (id., at 832 [emphasis added]).
The agency rationale has been applied in some earlier decisions in State courts (see, e.g., Commonwealth v Vose, 157 Mass 393, 32 NE 355; Miller v Lathrop, 50 Minn 91, 52 NW 274; Nadau v White Riv. Lbr. Co., 76 Wis 120, 43 NW 1135) and acknowledged as a tenable theory for admitting interpreted testimony by our Court (see, People v Chin Sing, 242 NY 419, 422-423; but see, People v Randazzio, 194 NY 147, 156-158, supra [unnecessary to rely on agency rationale for admission of stenographer’s transcript of confession made through interpreter since reliability was sufficiently established where interpreter testified to accuracy of translation]; Fisch, New York Evidence § 874 [2d ed]; Richardson, Evidence § 557 [Prince 10th ed]; see also, People v Perez, 128 Misc 2d 31, 32-34).
Notwithstanding the precedential support for its use, the agency theory could not be a ground for admitting Tillery’s testimony. Here, in contrast to the circumstances in Da Silva, it cannot be said that the interpreter had "no motive to mislead” (725 F2d, at 832) or that there was no reason to question the accuracy of his translation (id.). Whatever his actual role and true motives might have been in the transactions, it can hardly be thought that Davila — a paid informant whose remuneration depended on the "prosecutability” of the *363 case against defendant — could have been acting in the capacity of go-between and interpreter as an agent for defendant’s benefit.
B
Nor is there merit to the People’s alternative argument for receiving Tillery’s testimony under the rationale employed in People v Randazzio (supra) — i.e., that Davila presumably "verified” his translation by testifying to the same transactions as Tillery and thereby made Tillery’s testimony reliable. Davila, unlike the interpreters in Randazzio and Da Silva, had a motive to lie. As the trial court noted in its cautionary instructions, the probative worth of Tillery’s testimony depended entirely on the truth of Davila’s translations. If it be assumed that Davila’s original translations to Tillery were false, his reiteration of the same falsehoods on the stand could certainly not have enhanced the underlying probative worth of Tillery’s testimony. All that Davila’s testimony could have "verified” is that Tillery remembered and repeated Davila’s supposed falsehoods correctly.
Ill
We reject the People’s contention that there was not a significant probability that the receipt of Tillery’s testimony affected the result. The case hinged on the jury’s accepting as true the translations of one witness, Davila, an interpreter whose credibility was very much in issue. We cannot say that permitting Tillery — a witness of good reputation whose credibility could not be questioned — to bolster Davila’s testimony by repeating the same translations and, in effect, giving them the gloss of approval was harmless error (see, People v Crimmins, 36 NY2d 230, 236). Defendant’s due process argument concerning Davila’s fee arrangements is not preserved for our review. In view of the foregoing decision, we do not address defendant’s other arguments.
The order of the Appellate Division should be reversed and a new trial ordered.
Chief Judge Wachtler and Judges Simons, Kaye, Alexander, Titone and Bellacosa concur.
Order reversed, etc.