OPINION OF THE COURT
Memorandum.
Judgments of conviction unanimously affirmed.
Responding to a police radio report of a “dangerous condition” on Etna Street near Logan Avenue, Brooklyn, the investigating officer observed two damaged automobiles and a number of onlookers, one of whom accused defendant, who stood nearby, of operating a motor vehicle which struck the onlooker’s vehicle several blocks away and of departing the accident scene without exchanging driver’s documentation or reporting the incident to the police. After a futile attempt to communicate with defendant, who understood only Spanish, the officer, who understood only English, inquired whether any of the bystanders were sufficiently bilingual to assist his investigation. One of the onlookers offered his services and in the course of the subsequent colloquy, conducted in a noncustodial atmosphere and in which defendant freely acquiesced, defendant uttered incriminating statements, particularly with respect to his operation of the vehicle involved in the accident. The officer never ascertained the translator’s identity and the People did not produce the translator at trial. Defendant moved unsuccessfully in the court below to suppress said statements and for an order in limine precluding the People’s use of the statements. Defendant now argues that the statements’ introduction at trial for the truth of their content violated his rights under the Confrontation Clause and state law hearsay rules (see People v Romero, 78 NY2d 355 [1991]), and that without the statements, the evidence was legally insufficient to support the judgments of conviction.
We reject defendant’s challenge to the statements’ admission on state law hearsay grounds. In People v Romero (78 NY2d 355 [1991], supra), the Court applied a two-part test for the admission of a declarant’s statements to an unavailable translator: (1) “If a party has made an interpreter an agent for the purpose of translating what he or she says, the interpreter’s translations may be received as party admissions” so long as (2) “there is no *69 motive to mislead and no reason to believe the translation is inaccurate” (id. at 361-362 [internal quotation marks omitted and citations omitted]; see e.g. Quispe v Lemle & Wolff, 266 AD2d 95 [1999]; People v Generoso, 219 AD2d 670 [1995]). Applying the foregoing to the facts herein, we find the Romero test satisfied in that defendant implicitly ratified the translator’s role, permitting an inference that the translator became the agent of both parties, and there is no indication of the translator’s bias or an inaccuracy in the translations.
We construe Romero to require only that the proof permit an inference of the declarant’s actual or implied authorization to the translator to perform that function to establish the necessary agency relationship. While the investigating officer may have “selected” the translator in the limited sense that he solicited assistance generally from the assembled group of onlookers, none of whom he knew, to assist his investigation, defendant acquiesced in the bystander’s role as translator, which the translator performed in a public, noncustodial atmosphere wherein defendant was free to reject the translator’s efforts to facilitate communication between himself and the officer, and which lacked any indicia of coercion aside from what may naturally be attendant upon a routine car accident investigation. Thus, the translator should be deemed the agent of both parties (see People v Chin Sing, 242 NY 419, 422 [1926] [agency exception to the hearsay rule applies where the interpreter “had been selected by common consent of the parties endeavoring to converse or by the party against whom the statements of the interpreter were offered in evidence”]; see 58 NY Jur 2d, Evidence and Witnesses § 313).
We also find no evidence of bias, linguistic incompetence, or any other ground that would render the statements inadmissible under Romero. The translator denied having “anything to do” with the incident and communicated defendant’s denial that he had been drinking, thereby avoiding an opportunity, were the translator so inclined, to incriminate defendant. As to the translator’s competence, the answers received were apposite to the questions asked and defendant’s nonverbal conduct, for example, in searching his wallet and producing an identification document following the officer’s request for driver’s documentation, supports the inference that the translator accurately communicated the parties’ statements.
The courts in other jurisdictions have reached analogous results. In Gomez v State (49 SW3d 456, 460 [Tex 2001] [collect *70 ing cases]), confronted, with similar facts and a defendant’s claim that operation could not be proved without the officer’s testimony as to the translator’s rendering of defendant’s admission, the court concluded that “neither party ‘supplied’ [i.e. selected] . . . [the] interpreter; rather, he was a bystander who took on that role. However, from the record it can be inferred that both [defendant] and [the officer] acquiesced to [the bystander] acting as interpreter.” In Correa v Superior Ct. (27 Cal 4th 444, 462 n 3, 40 P3d 739, 751 n 3 [2002]), a case that surveyed federal and state authority on the subject, the court, noting the widespread use of interpreters (and that in California “224 languages are spoken . . . and more than 4 percent of the state’s residents speak no English”) and the language conduit/agency dichotomy in various analyses, cited People v Torres (213 Cal App 3d 1248, 1258, 262 Cal Rptr 323 [1989]) with approval wherein the court, confronted with facts similar to the instant case, concluded: “When two persons speaking different languages select an interpreter as a medium of their communication, the interpreter is regarded as their joint agent for that purpose.” Thus, while Torres appeared to adopt the agency approach which treats a translator’s rendering of a declarant’s statement as if it were the declarant’s own once the agency relationship is established, as opposed to the conduit theory which attributes a translator’s statements to the declarant so long as the translator’s skill and fidelity to a proper translation is established, either result permits a declarant’s statements (if a party) to be admitted under the party-admission exception to the hearsay rule. Other jurisdictions, applying the conduit test, consider the identity of the party “selecting” the translator as merely a factor in determining whether the translator, if suitably unbiased and competent, may be deemed the declarant in his or her discourse with the interlocutor (e.g. Cruz-Reyes v State, 74 P3d 219, 223 [Alaska 2003] [noting cases relying on agency and conduit theories and concluding that a translator who is “capable and fair” eliminates the hearsay issue, under either theory]).
While Romero appears to conflate the conduit/agency distinction, nothing in that formulation prevents an approach to the agency issue that considers “a party’s intentional reliance on a person to act as a translator ... an implied authorization to speak for the party” (Correa v Superior Ct., 27 Cal 4th at 455 n 2, 40 P3d at 746 n 2 [internal quotation marks omitted]; see also Cassidy v State, 149 SW3d 712, 715 [Tex 2004] [approving Gomez v State and adopting the conduit theory]).
*71 Defendant’s claim based on Crawford v Washington (541 US 36 [2004]) is not preserved for appellate review. At trial, defendant objected to the arresting officer’s testimony as to the non-testifying translator’s account of his conversation with defendant explicitly and solely on state law hearsay grounds. While Crawford has been accorded retroactive application to all cases whose appeals remained pending as of the decision date (Griffith v Kentucky, 479 US 314, 328 [1987]; People v Hardy, 4 NY3d 192 [2005]), the issue is preserved by appropriate objection under state law preservation rules (CPL 470.05 [2]; People v Gray, 86 NY2d 10 [1995]) which, in the case of Confrontation Clause claims, must be articulated with the requisite reference to the federal constitutional right (People v Kello, 96 NY2d 740, 743 [2001]; see e.g. People v Douglas, 4 NY3d 777 [2005]; People v Bones, 17 AD3d 689 [2005]; People v Ko, 15 AD3d 173 [2005]; People v A.S. Goldmen, Inc., 9 AD3d 283, 284 [2004]).
Were we to address the issue in the interest of justice, we would affirm. While defendant’s statements were arguably testimonial in that they resulted from “structured police questioning” (Crawford v Washington, 541 US at 53 n 4) albeit of a noncustodial nature, the translator was not subject to police questioning, and per Romero he was not a declarant within the normal sense of the term. The Confrontation Clause does not guarantee the right to scrutinize the truth of the contents of the statements the translator attributed to the officer in Spanish and to the defendant in English, matters which the translator is not competent to assess, but at most, whether such statements were uttered as reported. In other words, what defendant sought to test in “the crucible of cross-examination” was the translator’s willingness and capacity to render statements accurately from one language to another which, as noted, is a purely state law “reliability” issue. Moreover, defendant had every opportunity to cross-examine the investigating officer as to the questions the officer posed to the translator and to the responses the translator attributed to defendant. As defendant was a witness to the translator’s Spanish-language rendition of the officer’s questions and to his own Spanish-language responses thereto, he had independent knowledge of the accuracy of the officer’s rendition of the colloquy as the officer recalled and understood it. As the only remaining untested statements were attributed to an in-court declarant, the accused, what remains is the claim that he was denied the right to confront himself. As a party declarant, the admissibility of his own statements is *72 subject to a state law hearsay exception (People v Collins, 301 AD2d 452 [2003] [defendant’s statement to a third party properly admitted under the party admission exception to the hearsay rule as “inconsistent with defendant’s position at trial”]; see People v Auricchio, 141 AD2d 552 [1988]). A further ground to reject the Crawford claim is the analysis of Romero which, as noted, adopted the proposition that a translator found honest and competent is “no more than a language conduit’ ” for the declarant (78 NY2d at 362) permitting receipt of the interpreter’s translations “as party admissions.” Again, because the admissibility of a translator’s rendering of the party’s statements is the translator’s capacity and willingness to translate accurately, albeit a state law reliability test, the translator, per Romero, is not one whose statements are independently testimonial within the meaning of the Confrontation Clause.
Defendant’s general motion to dismiss the charges for evidentiary insufficiency, with the exception of reckless driving (the challenge to which was explicitly based on the lack of proof of operation), failed to preserve the claim for appellate review (CPL 470.05 [2]; People v Gray, 86 NY2d 10, 19 [1995]; People v Santos, 86 NY2d 869, 870 [1995]; People v Bynum, 70 NY2d 858, 859 [1987]). As to the reckless driving charge, defendant’s operation was amply proven by his arrest scene admissions and the testimony of the complaining witness.
Pesce, PJ., Golia and Rios, JJ., concur.