08-5478-pr
*Barnes v. Burge*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY THIS COURT'S LOCAL RULE 32.1.1 AND FEDERAL RULE OF APPELLATE PROCEDURE 32.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated Term of the United States Court of Appeals for the Second Circuit, held at the Daniel Patrick Moynihan United States Courthouse, 500 Pearl Street, in the City of New York, on the 21st day of April, two thousand and ten.

PRESENT:

DEBRA ANN LIVINGSTON,
GERARD E. LYNCH,
*Circuit Judges.*[*]

_____

ARRELLO BARNES,

*Petitioner-Appellant*,

-v-                                                    08-5478-pr

JOHN BURGE, Superintendent, Auburn Correctional Facility,

*Respondent-Appellee.*[**]

_____

[*] The Honorable Rosemary S. Pooler, originally a member of this panel, did not participate in the consideration of this appeal. The two remaining members of the panel, who are in agreement, have determined the matter. *See* 2d Cir. Internal Operating Procedure E(b); 28 U.S.C. § 46(d); *United States v. Desimone*, 140 F.3d 457 (2d Cir. 1998).

[**] The Clerk of the Court is respectfully directed to amend the official caption to conform to the above.

FOR PETITIONER-APPELLANT:        JONATHAN SVETKEY, Watters & Svetkey, LLP, New York, NY

FOR RESPONDENT-APPELLEE:        USHIR PANDIT, Assistant District Attorney, Queens County District Attorney's Office, *for* Richard A. Brown, District Attorney, Queens County (John M. Castellano, Assistant District Attorney, *on the brief*), Kew Gardens, NY

Appeal from the United States District Court for the Eastern District of New York (Garaufis, *J.*).

**UPON DUE CONSIDERATION**, it is hereby **ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court be **AFFIRMED**.

Petitioner-Appellant Arrello Barnes appeals from a judgment of the United States District Court for the Eastern District of New York (Garaufis, *J.*) denying his petition for a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254. Petitioner was convicted in 2000 on two counts of murder in the second degree and two counts of robbery in the first degree for his involvement in the killing of Brian Boyd. The New York state courts affirmed the convictions. *See People v. Barnes*, 734 N.Y.S.2d 893 (2d Dep't 2001). Petitioner sought habeas relief on various grounds, among which was the claim that he was deprived of the effective assistance of counsel at trial in violation of the Sixth Amendment. *See Strickland v. Washington*, 466 U.S. 668 (1984). We granted a certificate of appealability solely on certain aspects of Petitioner's ineffective assistance claim. In brief, Petitioner argues that his trial counsel failed to interview several of Petitioner's family members, each of whom would have testified that he or she was present when Petitioner's co-defendant, his cousin James Benbow, confessed to them shortly after the crime that he had committed the murder and that Petitioner had "nothing to do with the shooting." App. 46. Benbow further allegedly stated that Petitioner, who was himself wounded during the crime, was shot while exiting a store near the

shooting. *Id.* Counsel did speak to one such witness, Jerrissica Fauntleroy, who told him that several others were willing to offer similar testimony. *Id.* Petitioner also argues that his trial counsel was ineffective because he failed to investigate whether Benbow himself would testify on his behalf. We assume the parties' familiarity with the remaining facts, procedural history, and issues presented on appeal.

"We review a district court's denial of a petition for a writ of habeas corpus *de novo*." *Ortiz v. N.Y.S. Parole in Bronx, N.Y.*, 586 F.3d 149, 155 (2d Cir. 2009). "When [a] state court has adjudicated the merits of [a] petitioner's claim, we apply the deferential standard of review established by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), under which we may grant a writ of habeas corpus only if the state court's adjudication 'was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.'" *Dolphy v. Mantello*, 552 F.3d 236, 238 (2d Cir. 2009) (quoting 28 U.S.C. § 2254(d)(1)). To qualify as an adjudication "on the merits," "a state court decision need not mention a particular argument or explain the reasons for rejecting it." *Dallio v. Spitzer*, 343 F.3d 553, 560 (2d Cir. 2003).

Under *Strickland*, to establish ineffective assistance of counsel, a habeas petitioner must "(1) demonstrate that his counsel's performance fell below an objective standard of reasonableness in light of prevailing professional norms; and (2) affirmatively prove prejudice arising from counsel's allegedly deficient representation." *Carrion v. Smith*, 549 F.3d 583, 588 (2d Cir. 2008) (quoting *United States v. Cohen*, 427 F.3d 164, 167 (2d Cir. 2005)) (internal quotation marks omitted). To satisfy the "performance" prong, "the record must demonstrate that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Wilson v. Mazzuca*, 570 F.3d 490, 502 (2d Cir. 2009) (quoting *Strickland*, 466 U.S. at 687) (internal

3

quotation marks omitted). "In assessing whether counsel's performance was objectively reasonable, we must indulge a strong presumption that counsel's performance falls within the wide range of reasonable professional assistance." *Brown v. Greene*, 577 F.3d 107, 110 (2d Cir. 2009) (quoting *Aparicio v. Artuz*, 269 F.3d 78, 95 (2d Cir. 2001)) (internal quotation marks omitted). Counsel's omissions fall outside this range of reasonableness only if they "*cannot* be explained convincingly as resulting from a sound trial strategy, but instead arose from oversight, carelessness, ineptitude, or laziness." *Eze v. Senkowski*, 321 F.3d 110, 112 (2d Cir. 2003) (emphasis added). To satisfy the "prejudice" prong, Petitioner must demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694; *see also Mazzuca*, 570 F.3d at 502. In assessing prejudice stemming from the failure to investigate and introduce certain evidence, a court must consider "*all* the relevant evidence that the jury would have had before it" had the evidence been introduced, including unfavorable evidence. *Wong v. Belmontes*, 130 S. Ct. 383, 386 (2009) (per curiam) (emphasis in original).

1. The Ineffective Assistance Claim Regarding Counsel's Lack of Investigation of James Benbow

We granted a certificate of appealability in this case in part on the issue whether Petitioner's counsel rendered ineffective assistance by failing to investigate James Benbow himself as a potential witness. *See* Order of Apr. 17, 2009 (No. 08-5478-pr). As Petitioner proceeded *pro se* before the district court, we construe his habeas petition to raise the strongest arguments that it suggests. *See, e.g.*, *Ruiz-Martinez v. Mukasey*, 516 F.3d 102, 120 (2d Cir. 2008); *Brownell v. Krom*, 446 F.3d 305, 310 (2d Cir. 2006). We conclude that this claim was fairly presented to the district court, but the record does not reveal whether it was exhausted in state court. *See* 28 U.S.C. §§ 2254(b)(1)(A); 2254(b)(3). We may, however, deny the petition on the merits even if it raises a claim that was not exhausted. *See id.* § 2254(b)(2).

4

We conclude that, even assuming Petitioner's counsel's failure to investigate Benbow as a witness fell below an objective standard of reasonableness, Petitioner is unable to show that his counsel's alleged errors resulted in any prejudice to him. According to the affidavits of Petitioner's family members, to whom Benbow allegedly confessed, Benbow would have testified that "[Benbow] shot [the victim] and shot [Petitioner] by mistake as he was coming out [of] the store. . . . [and that Petitioner] had nothing to do with the shooting." Fauntleroy Aff. Benbow himself swore in an affidavit executed several years after the crime and his conviction that he had made this confession to Petitioner's family and that Petitioner "knew none of what happen[ed] and [that Benbow was] willing to testify on his behalf." Benbow Aff. Shortly after the crime and prior to Petitioner's trial, however, Benbow made a statement to the police that directly contradicts this proposed testimony. Specifically, Benbow stated that Petitioner "approached the victim and [had] words with him," that the victim "grabbed" the Petitioner and "pushed him back," and that after a struggle, Petitioner said to his cousin "pull out the gun," which apparently went off causing the victim's death. Gov't's Ex. B. This statement obviously conflicts with the notion conveyed by Benbow's later alleged confession — that Petitioner was an innocent bystander who knew nothing about the shooting.

Although Benbow's statement to the police would have been inadmissible hearsay on its own, had Benbow testified at Petitioner's trial in his favor, the statement could have been introduced to impeach his credibility. *See, e.g.*, *People v. Ricco*, 437 N.E.2d 1097, 1099 (N.Y. 1982); *Weinstein's Federal Evidence* § 105.06[2] (2d ed. 2008). Likewise, had Benbow testified and been subject to cross-examination, the Confrontation Clause would not have barred the introduction of the statement. *See United States v. Shareef*, 190 F.3d 71, 78 (2d Cir. 1999). Here, had Benbow testified, the prosecution could have cross-examined him regarding his prior inconsistent statement, with the effect (at best for Petitioner) of calling Benbow's credibility into question; at worst, the statement could

have been devastating to Petitioner's defense in the eyes of the jury. *Cf., e.g.*, *Bruton v. United States*, 391 U.S. 123, 135-36 (1968) (characterizing statements of co-defendants admitting the crime and incriminating the defendant as "devastating" to a defendant); *see also Gray v. Maryland*, 523 U.S. 185, 192 (1998) ("[C]ertain powerfully incriminating extrajudicial statements of a codefendant — those naming another defendant — considered as a class, are so prejudicial that limiting instructions cannot work." (internal quotation marks omitted)).

Given that any testimony Benbow might have given would have been subject to impeachment with evidence that was itself prejudicial to Petitioner, we conclude that Petitioner has not shown that there was a "reasonable likelihood" that had his counsel investigated the possibility of Benbow's testifying "the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694; *see also Belmontes*, 130 S. Ct. at 386.

2. The Ineffective Assistance Claim Regarding Counsel's Lack of Investigation of Witnesses Other than James Benbow

Because the state court expressly addressed this aspect of the ineffective assistance claim on the merits in rejecting Petitioner's motion to vacate his conviction, *see Barnes v. Burge*, No. 03-CV-1475, 2008 WL 4646172, at *4 (E.D.N.Y. Oct. 20, 2008), we apply the AEDPA standard of review to Petitioner's claim here.

We conclude that the rejection of this aspect of Petitioner's ineffective assistance of counsel claim was neither "contrary to" nor an "unreasonable application of" *Strickland* or other clearly established federal law as set forth by the Supreme Court. 28 U.S.C. § 2254(d)(1). First, the evidence the witnesses would have proffered would have been inadmissible hearsay. Counsel's interview with Fauntleroy made it clear that the only testimony these witnesses would offer was of an out-of-court statement by Petitioner's cousin introduced for the truth of its content; this constitutes hearsay in New York. *See, e.g.*, *People v Romero*, 581 N.E.2d 1048, 1050 (N.Y. 1991). Because it

6

was clear any evidence the witnesses would provide would be inadmissible, counsel did not perform below an objective standard of reasonableness in failing to pursue this line of testimony either by calling Fauntleroy or investigating the other proffered witnesses, all family members of the Petitioner. *See, e.g.*, *United States v. Smith*, 198 F.3d 377, 386 (2d Cir. 1999) (decision whether to call witnesses and which witnesses to call is within counsel's discretion). Moreover, because the witnesses' evidence ultimately would have been inadmissible, Petitioner can prove no prejudice from counsel's having failed to investigate further after his interview with Fauntleroy. *See, e.g.*, *Bobby v. Van Hook*, 130 S. Ct. 13, 19 (2009) (per curiam) (counsel's failure to interview potential witnesses did not prejudice petitioner because proposed testimony would not have added anything of value to defense).

Petitioner's arguments that the proffered evidence would have been admissible under exceptions to the hearsay rule are unavailing. For the co-defendant's statement to have been admissible as a declaration against penal interest, Petitioner would need to have demonstrated that (1) the declarant was unavailable as a witness at trial; (2) when the statement was made the declarant "[was] aware that it was adverse to his penal interest;" (3) the declarant had "competent knowledge of the facts underlying the statement;" and (4) "most important, supporting circumstances independent of the statement itself [were] present to attest to its trustworthiness and reliability." *People v. Settles*, 385 N.E.2d 612, 619 (N.Y. 1978). Initially, the critical portion of the statement Petitioner argues would be admissible — that Petitioner "had nothing to do with the shooting," App. 46 — is not directly inculpatory of the declarant and is therefore not admissible under New York's penal interest exception. *See People v. Ennis*, 900 N.E.2d 915, 11 N.Y.3d 403, 413 (N.Y. 2008). Petitioner has also pointed to no "circumstances independent of the hearsay declaration itself . . . which fairly tend to support the assertions made [therein] and thereby assure their trustworthiness." *People v. James*, 717 N.E.2d 1052, 1062 (N.Y. 1999) (emphasis omitted). Nor was

7

the statement likely admissible under New York's constitutional due process exception to the hearsay rule, again because the testimony did not bear "sufficient indicia of reliability." *People v. Robinson*, 679 N.E.2d 1055, 1059 (N.Y. 1997).

Second, as discussed above, it is not an unreasonable conclusion that Petitioner cannot demonstrate prejudice because, even had the family members' testimony been admissible, Benbow's hearsay declaration would have been impeached, to devastating effect, with Benbow's prior statement to the police. *See, e.g.*, *People v. Delvalle*, 670 N.Y.S.2d 827, 828 (1st Dep't 1998) (hearsay declarant's statement may be impeached through the introduction of his prior inconsistent statement).

### 3. Petitioner's Entitlement to an Evidentiary Hearing

Finally, we conclude that the district court did not abuse its discretion in declining to hold an evidentiary hearing on Petitioner's ineffective assistance claim. Even assuming such a hearing was not barred, *see* 28 U.S.C. § 2254(e)(2), a question we need not address, the decision whether to conduct a hearing was within the discretion of the district court. *See Schriro v. Landrigan*, 550 U.S. 465, 468 (2007). It is true that we have said that a district court, absent "highly unusual circumstances," should afford an opportunity to counsel to explain whether he had a strategic basis for making the challenged decisions. *Sparman v. Edwards*, 154 F.3d 51, 52 (2d Cir. 1998) (per curiam). But such an explanation is only necessary when the claim of ineffective assistance is "serious enough to require an evidentiary hearing" in the first place. *United States v. Dukes*, 727 F.2d 34, 41 (2d Cir. 1984). Such a hearing is "not required on issues that can be resolved by reference to the state court record." *Landrigan*, 550 U.S. at 474 (quoting *Totten v. Merkle*, 137 F.3d 1172, 1176 (9th Cir. 1998)) (internal quotation marks omitted). Because we conclude that Petitioner has failed to demonstrate prejudice resulting from counsel's alleged errors, any evidence regarding why counsel took the actions he did would ultimately be irrelevant. The district court therefore was within its discretion to decline to conduct a hearing.

### 4. Conclusion

For the foregoing reasons, the judgment of the district court is AFFIRMED.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk