People v Brown (2025 NY Slip Op 25122)

[*1]

People v Brown

2025 NY Slip Op 25122

Decided on May 23, 2025

Criminal Court Of The City Of New York, Kings County

Berman, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the printed Official Reports.

Decided on May 23, 2025
Criminal Court of the City of New York, Kings County

The People of the State of New York,

against
Shonda Brown, Defendant.

Index No. CR-024423-24KN

Tehilah H. Berman, J.

Defendant Shonda Brown ("Defendant" or "Brown") was charged with filing a false report to the New York City Police Department ("NYPD") that her vehicle was stolen and filing a false claim with her insurer for the vehicle. Defendant moves for an order I) dismissing the accusatory instrument as facially insufficient pursuant to Criminal Procedure Law ("CPL") §§ 170.30 (1) (a) and 170.35 (1) (a); (ii) deeming the People's Certificate of Compliance ("COC") invalid on the ground that the People failed to disclose discoverable materials under CPL 245.20 (1); and (iii) dismissing all charges in this matter pursuant to CPL 30.30 on speedy trial grounds.
On June 13, 2024, defendant was arraigned on a felony complaint charging her with the following felonies which were later dismissed: Penal Law ("PL") § 175.25, PL 176.20, PL 175.35(1]), PL 210.40; and the following class A misdemeanors: tampering with public records in the second degree (PL 175.20), offering a false instrument for filing in the second degree (PL 175.30), insurance fraud in the fifth degree (PL 176.10), making an apparently sworn false statement in the second degree (PL 210.35), making a punishable false written statement (PL 210.45), falsely reporting an incident in the third degree (PL 240.50 [3] [A]).
Fire Marshal Joseph Hayes ("FM Hayes") of the New York City Fire Department ("FDNY") averred in the accusatory instrument that he was informed by Jameel Ashraf Mohammed ("Mohammed"or "informant") that he observed an inoperable 2016 Range Rover parked for several months at a mechanic shop. FM Hayes further avers that defendant met Mohammed at said mechanic shop and paid him to move the vehicle. Defendant and Mohammed together moved the vehicle onto a flatbed truck, and Mohammed drove away with the vehicle as defendant followed in another vehicle. Per defendant's instructions, Mohammed left the vehicle at 320 Miller Avenue, Brooklyn on March 19, 2024. FM Hayes further averred that he was informed by the official NYPD records, "kept in the regular course of business, on NYPD Complaint No. 2024-075-004706, that on March 20, 2024, defendant reported the vehicle stolen to PO Perez, and that the value of the vehicle is $26,000." Defendant also completed and signed a NYPD complainant's report of lost property, Complaint Number 2024-075-004706. Additionally, FM Hayes averred that Allstate Insurance records showed that defendant filed an insurance claim for the vehicle, and that FDNY records indicated that the vehicle was parked with a flat tire, damage to the front, missing engine parts, and with evidence that a minor fire had been set with gasoline and that the vehicle was dismantled.
Upon the People's request to dismiss the felony counts and reduce the charges, the parties appeared before the Hon. Monique J. Holaman in AP3 on October 23, 2024. Pursuant to CPL [*2]180.50 (3) (a) (iii), Judge Holaman dismissed the felony offenses listed in the felony complaint by inserting notations and affixing her initials and date next to those notations. The misdemeanor charges remained; all of which are classified as class A. On November 27, 2024, the People served defendant with a supporting deposition, signed by Mohammed ("Mohammed"). It was previously filed on the court's Electronic Document Delivery System ("EDDS") on October 22, 2024. Mohammed's supporting deposition states, under penalty of perjury: "I read the accusatory instrument, filed in this action. The facts in that instrument stated to be on information furnished by me are true to my knowledge." 
On December 4, 2024, the People filed their COC, Statement of Readiness ("SOR"), and inventory of 63 discovery items, including the "New York City Police Department Omniform System - Complaints regarding Complaint #2024-75-004706," and "Complainant's Report of Lost or Stolen Property/Identity Theft regarding Complaint #2024-75-004706;" supporting deposition regarding complaint #2024-075-004706; four video files capturing the towing of a vehicle, Claims History Report (64 pages), call transcripts relating to claim number 000749260766; and two telephone call recordings of interactions between defendant and Allstate Insurance Company.
On December 13, 2024, defense counsel sent a conferral email with a list of missing discovery including: (1) the Early Case Assessment Bureau ("ECAB") Screening Sheet [FN1]
, (2) Giglio [FN2]
material for testifying police officers, (3) a recording or any memorialization of statements elicited from defendant at the precinct, (4) any Body-Worn Camera ("BWC") videos of the NYPD officers involved in the case, and (5) DD5s, if any. The People, through Maxim Labunsky, responded to defendant's conferral email on the same date, that: 1) ECAB screening sheets are not routinely included in COCs; 2) Giglio material was ordered for the two Fire Marshals who were expected to testify; 3) NYPD played a secondary role in the investigation and apprehension of defendant, and that the investigation was primarily performed by FM Hayes; 4) diligent efforts were made to inquire as to BWC footage and any recorded interrogation but that there was no indication that such material existed; and 5) DD5s are produced by NYPD Detectives, and the complete investigatory file of the DNY Fire Marshal that was produced for defense counsel is analogous to DD5s. On December 17, 2024, the People provided Defendant with a copy of the ECAB Screening Sheet and filed a Supplemental Certificate of Compliance ("SCOC"). Defendant filed the instant motion to dismiss on February 3, 2025.
FACIAL SUFFICIENCY
CPL 170.35 provides that an "information, a simplified information, a prosecutor's information or a misdemeanor complaint, or a count thereof, is defective within the meaning of paragraph (a) of subdivision one of section 170.30 when ...[i]t is not sufficient on its face pursuant to the requirements of section 100.40." CPL 100.40(4) provides that a misdemeanor or felony complaint is sufficient on its face when it "(a) substantially conforms to the requirements prescribed in section 100.15; and (b) The allegations of the factual part of such accusatory instrument and/or any supporting depositions which may accompany it, provide reasonable cause to believe that the defendant committed the offense charged in the accusatory part of such instrument." CPL 100.15 (2) provides that the accusatory part of each such instrument must designate the offense or offenses charge, and § 100.15 (3) provides that the factual part must contain a statement of the complainant alleging facts of an evidentiary character supporting or tending to support the charges. The factual allegations may be based either upon personal knowledge of the complainant or upon information and belief. Every element of the offense charged and the defendant's commission thereof must be supported by non-hearsay allegations of such information and/or any supporting depositions. A misdemeanor complaint, which may contain allegations based on hearsay, must be replaced by an information or "converted" to an information. (People v. Slade, 37 NY3d 127 [2021].) Conversion is accomplished by filing and serving a supporting deposition which when read in conjunction with the complaint, alleges nonhearsay allegations sufficient to constitute an information. (C.P.L. 100.15 [3]; 170.65(1).)
It is undisputed that the accusatory part of the misdemeanor complaint designates the offense charged and therefore meets the requirements CPL 100.15(2). The first issue is whether the it contains facts of evidentiary character which demonstrate "reasonable cause" to believe that defendant committed the offenses charged. CPL §§ 100.15(3) and 100.40(b). CPL 70.10(2) provides: "Reasonable cause to believe that a person has committed an offense exists when evidence or information which appears reliable discloses facts or circumstances which are collectively of such weight and persuasiveness as to convince a person of ordinary intelligence, judgment and experience that it is reasonably likely that such offense was committed and that such person committed it." If the facts alleged give a defendant "notice sufficient to prepare a defense and are adequately detailed to prevent a defendant from being tried twice for the same offense, they should be given a fair and not overly restrictive or technical reading." People v. Willis, 2025 NY Slip Op 01405, 2025 NY LEXIS 270, *5-6 (2025); People v. Konieczny, 2 NY3d 569, 575 (2004). The second issue is whether the facts are supported by non-hearsay allegations. 
In Willis, supra, the Court of Appeals held that an accusatory instrument was facially sufficient where it included an averred statement from a police officer that the defendant was observed operating a motor vehicle, and that a computer check run by the officer of the records of the Department of Motor Vehicles showed that the defendant's driver's license was suspended at least three times on at least three separate dates and had not been reinstated based on failure to answer a summons, and that all such summonses have printed on them "[i]f you do not answer this ticket by mail within fifteen (15) days your license will be suspended,' [and that] the suspension occurs automatically (by computer) within four weeks of the defendant's failure to answer." The Court reasoned that the misdemeanor complaint satisfied the reasonable cause standard to the extent that it stated what the defendant was accused of doing, and the time, date, and location of the occurrence, and provided the defendant with enough information as to how they committed the crime and what defenses were available to them. Willis, supra, 2025 NY [*3]LEXIS 270, at *5. 
Similarly, in this case this court finds that the averred statement from FM Hayes [FN3]
that he was informed by the official NYPD records, NYPD Complaint No. 2024-075-004706, that on March 20, 2024, defendant reported the vehicle, valued at $26,000, stolen to PO Perez, taken together with the averred statement that FM Hayes was informed by Mohammed that defendant paid him to move the vehicle on March 19, 2024, satisfied the reasonable cause standard to the extent that it stated what defendant was accused of doing, i.e., filing a false police report that her vehicle was stolen in violation of §§ PL 175.20, 175.30, 210.35, 210.45, and 240.50(3)(a), and the time, date, and location of the occurrence, and provided defendant with enough information as to the what defenses, if any, were available. FM Hayes' averred statement that he observed FDNY records which indicated that the vehicle was found at the subject location with its engine dismantled and evidence of a minor fire later determined to be caused by gasoline, provides facts of an evidentiary character which support the charge that defendant tampered with public records in violation of PL 175.20. 
Furthermore, FM Hayes' averment that he "observed All-State Insurance records to show defendant filed an insurance claim for said vehicle," taken together with his averment that he was informed that defendant paid Mohammed to move defendant's vehicle, satisfied the reasonable cause standard to the extent that defendant was informed of the accusations, i.e., making sworn false statements in violation of PL § § 210.35, 210.45, and provided her with enough information as to the defenses available. 
Defendant challenges the facial sufficiency of the accusatory instrument on the ground that the accusatory instrument contains no non-hearsay allegations to substantiate the elements of the following class A misdemeanors: tampering with public records in the second degree (PL § 175.20); offering a false instrument for filing in the second degree (PL § 175.30); gratuitously reporting to a law enforcement officer or agency the alleged occurrence of an offense or incident which did not in fact occur (PL § 240.50[3][a]); making an apparently sworn false statement in the second degree (PL § 210.35); and making a punishable false written statement (PL §210.45).[FN4]
[*4]Defendant, in effect, argues that the following statements in the accusatory instrument constitute hearsay: 1) "The Deponent [Fire Marshal Joseph Hayes] is informed by the official New York city Police Department records, kept in the regular course of business, on New York Police Department complaint No. 2024-075-004706, that on March 20, 2024, defendant reported the above mentioned vehicle stolen to Police Officer Perez, and that the value of the vehicle is $26,000.00 United States currency, and that defendant also signed and wrote out a NYPD Complainant's report or lost property;" and 2) The Deponent [Fire Marshal Joseph Hayes] further states that deponent observed All-State Insurance records to show defendant filed an insurance claim for said vehicle." Defendant further claims that the People have not properly converted the accusatory instrument to a facially sufficient information. 
"Hearsay" is defined as a statement made out of court offered for the truth of the fact asserted in the statement. People v. Goldstein, 6 NY3d 119, 127 (2005); People v. Romero, 78 NY2d 355, 361 (1981). A "statement which is not offered to establish the truth of the facts asserted therein is not hearsay." Gelpi v. 37th Ave. Realty Corp., 281 AD2d 392, 392 (2d Dept. 2001). In this case, the aforementioned statements of deponent FM Hayes were not submitted to prove the truth of the matter contained therein, i.e., that the vehicle valued at $26,000 was stolen or lost, but rather for the purpose of showing that defendant had reported to the police and All-State Insurance that the vehicle was stolen. Therefore, this court finds that FM Hayes' statements in the accusatory instrument regarding what the records of the NYPD, FDNY and All-State Insurance revealed, do not constitute hearsay. [See, e.g., High v Taylor, 2020 NY Slip Op 32963(U), 2020 NY Misc. LEXIS 5675, *22-23 (Sup. Ct. Broome Co. 2020) (police records were not submitted to prove truth of matter contained therein, but for purpose of showing that past criminal activity had been reported; thus, police reports were not hearsay).
On the other hand, the averred statement of FM Hayes that he was informed by Mohammed that Mohammed observed an inoperable vehicle parked for several months at a mechanic shop and that defendant met him at a mechanic shop and paid him to move the vehicle to the subject location and leave it there constitutes hearsay since it was an out or court statement offered to prove the truth of the facts asserted therein. However, this court finds that the supporting deposition of Mohammad served upon defendant on November 27, 2024, wherein he stated that he read the accusatory instrument and the information was true to his knowledge, cured the hearsay defect, thus rendering the accusatory instrument facially sufficient. CPL § 170.65 provides: "If the misdemeanor complaint is supplemented by a supporting deposition and such instruments taken together satisfy the requirements for a valid information, such misdemeanor complaint is deemed to have been converted to and to constitute a replacing information." A supporting deposition is a "written instrument accompanying or filed in connection with ... a misdemeanor complaint ..., subscribed and verified by a person other than the complainant of such accusatory instrument, and containing factual allegations of an evidentiary character, based either upon personal knowledge or upon information and belief, which supplement those of the accusatory instrument and support or tend to support the charge [*5]or charges contained therein." CPL § 100.20 requires that a supporting deposition be written, filed in connection with a misdemeanor complaint, subscribed and verified by a person other than the deponent who averred to the misdemeanor complaint; and "contain factual allegations of an evidentiary character based on the deponent's personal knowledge that supplement the allegations in the misdemeanor complaint and support or tend to support the charges." People v Pachesa, 50 Misc 3d 238, 242 (Crim. Ct. NY Co. 2015). "Factual allegations of an evidentiary character" means "nonconclusory descriptions of what the deponent personally observed, heard or experienced. People v. Alvarenga-Mendez, 22025 NY Slip Op 50512(U), 1025 NY Misc. LEXIS 2200, *6-7 (Poughkeepsie Town Ct, Dutchess Co. 2025), citing Pachesa, supra, 50 Misc 3d 238. 
All of above criteria are satisfied here. The supporting deposition was written, filed in connection with a misdemeanor complaint, Mohammed was not the deponent who averred the charges and facts in the misdemeanor complaint, and Mohammed had personal knowledge that supported the charge that defendant paid him to move the vehicle to the subject location, and made the following statement under penalty of perjury (PL 240.45): "I read the accusatory instrument, filed in this action. The facts in that instrument stated to be on information furnished by me are true to my knowledge." See, People v Guillermo (Davito), 2020 NY Misc. LEXIS 1600, *1-3 (App. Term 1st Dept. 2020) (where the misdemeanor complaint alleged that undercover police officer had drug-related conversation with the defendant regarding the purchase of marijuana, and the officer handed the defendant money in exchange for marijuana, and the officer signed a supporting deposition under penalty of perjury, acknowledging that he read the misdemeanor complaint and that the facts stated therein were true based upon his personal knowledge, the misdemeanor complaint was deemed converted to an information); Pachesa, supra, 50 Misc 3d at 242-243 (sworn statement in supporting deposition of informant that she read the misdemeanor complaint, and that she knew based on her personal knowledge that the allegations contained in it were true, satisfied CPL 100.20). Accordingly, this court finds that the misdemeanor complaint was properly converted to an information when the Mohammed's supporting deposition was served on defendant on November 27, 2024. VALIDITY OF THE PEOPLE'S COC
The main question in determining whether a proper COC has been filed is "whether the prosecution has exercised due diligence and made reasonable inquiries to ascertain the existence of material and information subject to discovery." People ex rel. Nieves v. Maginley-Liddie, 232 AD3d 568, 569-570 (2d Dept. 2024); People v. Drayton, 231 AD3d 1057, 1059(2d Dept. 2024). Although "due diligence," is not defined in CPL § 245.50, it is a flexible standard that requires the People "to make reasonable efforts" to comply with statutory requirements. People v. Bay, 41 NY3d 200, 211-212, 208 N.Y.S.3d 490, 232 N.E.3d 168 (2023). The court's determination as to whether the People have exercised due diligence and made reasonable efforts sufficient to satisfy CPL 245.20 and 245.50 is case and fact specific. Id.; People v. McMahon, 2025 NY Slip Op 01951, 2025 NY App. Div. LEXIS 1915, *7 (2d Dept. 2025). The court must consider factors including but not limited to: "the efforts made by the prosecution and the prosecutor's office to comply with the statutory requirements, the volume of discovery provided and outstanding, the complexity of the case, how obvious any missing material would likely have been to a prosecutor exercising due diligence, the explanation for any discovery lapse, and the People's response when apprised of any missing discovery." People ex rel. Nieves, supra, 232 [*6]AD3d at 570. CPL 245.60 imposes a "continuing duty to disclose, and when the People provide discovery after a COC has been filed, they must file a supplemental COC." Bay, supra, 41 NY3d at 209. The filing of a supplemental COC "shall not impact the validity of the original certificate of compliance if filed in good faith and after exercising due diligence." CPL § 245.50 (1-a).
Non-existent Items
The People contend that no recording or memorialization of statements elicited from defendant at the precinct, body-worn camera videos or DD5s exist in this matter, and that they had inquired and were advised by the Bureau of Fire Investigation ("BFI") and NYPD that these items do not exist. The People's failure to produce the aforementioned items does not invalidate the People's COC as these items do not exist. Pursuant to CPL 245.20(2), the duty of the prosecutor is to "make a diligent, good faith effort to ascertain the existence of material or information discoverable under subdivision one of this section and to cause such material or information to be made available for discovery where it exists but is not within the prosecutor's possession, custody or control." "It is axiomatic that the People cannot disclose materials that do not exist" [People v. Haggan, 2025 NY Slip Op 50266[U], 2025 NY Misc. LEXIS 1070, *7 (Sup. Ct. NY Co. 2025)], since they are not within their custody and control [People v Gonzalez, 2020 NY Slip Op 50924[U], 2020 NY. Misc. LEXIS 4462, *3 (Sup. Ct. Kings Co. 2020)], and their failure to disclose these items does not render their COC invalid [People v. Roman, 2025 NY Slip Op 50132[U], 2025 NY Misc. LEXIS 626, *1 (Crim. Ct. Bronx Co. 2025).
ECAB Screening Sheet
CPL 245.20 (1) (e) provides that the prosecution shall disclose to the defendant all items and information that are in the prosecution's possession, custody, or control, that relate to the subject matter of the case, and "[a]ll statements, written or recorded or summarized in any writing or recording, made by persons who have evidence or information relevant to any offense charged or to any potential defense thereto, including all police reports, notes of police and other investigators, and law enforcement agency reports." Under this provision, ECAB screening sheets are subject to automatic discovery. People v. Gonzalez, 2024 NY Slip Op 50894(U), 2024 NY Misc. LEXIS 2928, *5 (Crim. Ct. Kings Co. 2024); People v. Lyons, 2024 NY Slip Op 51088(U), 2024 NY Misc. LEXIS 5268, *6-7 (Crim. Ct. Kings Co. 2024). The People did not initially disclose the ECAB screening sheet prior to filing their COC on December 4, 2024 due to "ADA inexperience," and were only informed by defense counsel on December 13, 2025 that it was missing. To the extent that the People promptly provided the ECAB screening sheet to defense counsel on December 17, 2024 with the supplemental COC, this court finds that they acted in good faith, and exercised due diligence and made reasonable efforts to comply with the requirements set forth in CPL 245.20 and 245.50. See, People v. Macaluso, 230 AD3d 1158, 1160 (2d Dept. 2024) (belated disclosures that accompanied the supplemental COC were made in "good faith and with due diligence; they were minimal, insignificant, and voluntarily provided to the defense once the People were made aware of the existence of the undisclosed material"). Indeed, here is no "strict liability" rule, and "the statute does not require or anticipate a perfect prosecutor." People v. Henderson, 2025 NY Slip Op 02084, 2025 NY App. Div. LEXIS 2046, *4 (2d Dept. 2025); People v. Lane, 2025 NY Misc. LEXIS 3704, *13-14. Furthermore, the People's filing of the supplemental COC on December 17, 2025 with the ECAB screening sheet appended, did not affect the validity of the original COC pursuant to CPL 245.50(1-a).
[*7]Giglio Material for Non-testifying Police Officers
CPL 245.20(1)(k) provides that the prosecution must disclose to the defendant "all items and information that relate to the subject matter of the case and are in the possession, custody or control of the prosecution or persons under the prosecution's direction or control," including evidence that tends to: "(i) negate the defendant's guilt as to a charged offense; (ii) reduce the degree of or mitigate the defendant's culpability as to a charged offense; (iii) support a potential defense to a charged offense; (iv) impeach the credibility of a testifying prosecution witness; (v) undermine evidence of the defendant's identity as a perpetrator of a charged offense; (vi) provide a basis for a motion to suppress evidence; or (vii) mitigate punishment." This section further provides: "The prosecutor shall disclose the information expeditiously upon its receipt and shall not delay disclosure if it is obtained earlier than the time period for disclosure in subdivision one of section 245.10 of this article." CPL 245.20 (1)(k) codifies the People's Brady and Giglio obligations, and requires the People provide defendant with any exculpatory or impeaching evidence.[FN5]
People v. Weaver, 85 Misc 3d 489, 491 (Sup. Ct. Queens Co. 2024) Defendant claims that the People failed to comply with this provision by not producing Giglio impeachment material for non-testifying police officers who might have been involved in the case. In particular, defendant references PO Perez, who prepared the Complaint Report wherein defendant reported her vehicle stolen. The People argue that NYPD played a secondary role in the investigation and apprehension of defendant, and that the investigation was primarily performed by Fire Marshal Hayes, and since they do not intend to call any NYPD officers to testify, Giglio material for these non-testifying officers are not subject to automatic discovery.
Contrary to defendant's contention, law enforcement disciplinary records pertaining to individuals who will not testify at trial are not subject to automatic discovery inasmuch as CPL 245.20 (1) (k) (iv) only requires disclosure of materials that tend to impeach the credibility of 
testifying prosecution witnesses. People v. Henderson, 2025 NY Slip Op 02084, 2025 NY App. Div. LEXIS 2046, *3-4 (2d Dept. 2025); People v. Cooperman, 225 AD3d 1216, 1219 (4th Dept. 2024); People v. Uzhca, 2024 NY Slip Op 50297(U)� 2024 NY Misc. LEXIS 1315, *6-7 (Crim. Ct. Bronx Co. 2024). Furthermore, "a plain reading of the automatic disclosure statute establishes that the People are only required to disclose all items and information that relate to the subject matter of the case." People v. Macaluso, 230 AD3d 1158, 1160 (2d Dept. 2024). See also, People v. Martin, 2021 NY Slip Op 50348(U), 2021 NY Misc. LEXIS 1939, *4 (Erie County Ct. 2021) ("[CPL 245.20(1)(k)(iv)] must also be read within the context of CPL § 240.20(1), which restricts the universe of discoverable information to that which "relates to the subject matter of the case"). A contrary rule taken to its logical conclusion would require the People to undertake a fishing expedition to search the dockets of every case in every federal and state court in New York for complaints against their police witnesses, even when they had no active role in the investigation of the case. People v. Garrett, 23 NY3d 878, 890-891 (2014). 
Furthermore, CPL § 245,20(1)(k) excludes impeachment material from the automatic discovery time line established by CPL § 245.10(1) to the extent that it only requires the People [*8]to disclose this material "expeditiously upon its receipt." Martin, supra, 2021 NY Misc. LEXIS 1939, at *4-5. This rule comports with the People's continuing obligation to supply exculpatory and impeachment (Brady/Giglio) materials to the defense. United States v. Green, 2025 U.S. Dist. LEXIS 73675, *13 (W.D.NY 3/13/2025) Accordingly, the People's failure to disclose Giglio material for non-testifying police officers does not render their COC invalid. However, the People must adhere to their continuing duty to provide to defendant any exculpatory or impeaching evidence. 

SPEEDY TRIAL
CPL 30.30 (7) (c) and 180.50 (a) (iii) are the operative provisions in calculating speedy trial time when, in the course of a criminal proceeding, felony charges are dismissed and the only charges remaining are misdemeanors. It provides, in pertinent part: 
[W]here a criminal action is commenced by the filing of a felony complaint, and thereafter, in the course of the same criminal action either the felony complaint is replaced with or converted to an information, prosecutor's information or misdemeanor complaint pursuant to article one hundred eighty of this chapter , the period applicable for the purposes of subdivision one must be the period applicable to the charges in the new accusatory instrument, calculated from the date of the filing of such new accusatory instrument, provided, however, that when the aggregate of such period and the period of time, excluding the periods provided in subdivision four, already elapsed from the date of the filing of the felony complaint to the date of the filing of the new accusatory instrument exceeds six months, the period applicable to the charges in the felony complaint must remain applicable and continue as if the new accusatory instrument had not been filed.
Pursuant to CPL 180.50 (a) (iii), when charges are reduced from a felony to misdemeanor, the original felony complaint is deemed converted to a new "accusatory instrument" when the presiding judge inserts notations upon the original felony complaint "which make the necessary and appropriate changes. . . in the names of the offense or offenses charged." An exception to this calculation arises when the period already elapsed from the filing of the felony complaint to the filing of the new accusatory instrument added to the speedy trial time for the new accusatory instrument exceeds six months. In that case, "the period applicable to the charges in the felony complaint must remain applicable and continue as if the new accusatory instrument had not been filed" (CPL 30.30 [7] [c]).
This court must consider two time periods. The first is the CPL 30.30 period applicable to the highest charges in the new accusatory instrument that was filed, all class A misdemeanors, which must be calculated from the date of reduction. Pursuant to CPL 30.30 (1) (b), a class A misdemeanor has a 90-day speedy trial period. People v. Hernandez, 84 Misc 3d 10, 12 (App. Term. 2d Dept. 2024). As such, the 90-day period began to run from the date of reduction on October 23, 2024. However, pursuant to General Construction Law § 20, known as the "first-day exclusion," the date of reduction is excluded from calculating the 90-day period. (See, People v Chavis, 91 NY2d 500, 504 [1998]; People v Stiles, 70 NY2d 765, 767[1987]; People ex rel. Barta v Maginley-Liddie, 227 AD3d 754, 756 [2d Dept. 2024]). In excluding the date of reduction, January 21, 2025, was 90 days after October 23, 2024. 
The second time period that must be considered is the period from the filing of the original felony criminal court complaint on June 13, 2024, to the date of reduction on October [*9]23, 2024, excluding the first day. That period is calculated to be 132 days, and when added to the 90-day speedy trial period applicable to this matter, the combined total amount is 222 days, which is greater than six months. The exception described above therefore applies, and the speedy trial time of six months after the felony complaint was filed remains as if the new accusatory instrument had not been filed. (CPL 30.30 [7] [c]). Since the People filed the COC and SOR 174 days after the felony complaint was filed, they were well within the six month speedy trial requirements pursuant to CPL § 30.20
For the aforementioned reasons, defendant's motion to dismiss is denied. This constitutes the decision and order of the court.
Dated: May 23, 2025
Brooklyn, New York
Hon. Tehilah H. Berman
Judge, Criminal Court

Footnotes

Footnote 1:ECAB screens all arrests that occur in Kings County and determines whether a prosecution will be declined or move forward, and if the latter, the charges that will be brought. ECAB staff members interview police officers, victims and witnesses. The bureau drafts the accusatory instruments upon which defendants are arraigned, and prepares supporting documents and notices. http://www.brooklynda.org/early-case-assessment-bureau/

Footnote 2:Giglio material refers to any information the People learn about testifying witnesses that tends to impeach their credibility, which the People have a constitutional due process obligation to disclose per Giglio v United States, 405 US 150, 151[1972].

Footnote 3:FMl Hayes is considered to be a "police officer" under PL § 1.20(34)(I), which defines police officers to include fire marshals of the bureau of fire investigation of the New York City fire department.

Footnote 4:A person is guilty of offering a false instrument for filing in the second degree (PL 175.30) when "knowing that a written instrument contains a false statement or false information, he offers or presents it to a public office or public servant with the knowledge or belief that it will be filed with, registered or recorded in or otherwise become a part of the records of such public office or public servant." A person is guilty of making a punishable false written statement (PL 210.45) when "he knowingly makes a false statement, which he does not believe to be true, in a written instrument bearing a legally authorized form notice to the effect that false statements made therein are punishable." A person is guilty of falsely reporting an incident in the third degree (PL 240.50 [3] [A]) when "knowing the information reported, conveyed or circulated to be false or baseless, he or she [g]ratuitously reports to a law enforcement officer or agency the alleged occurrence of an offense or incident which did not in fact occur." A person is guilty of making an apparently sworn false statement in the second degree (PL 210.35) when "(a) he subscribes a written instrument knowing that it contains a statement which is in fact false and which he does not believe to be true, and (b) he intends or believes that such instrument will be uttered or delivered with a jurat affixed thereto, and (c) such instrument is uttered or delivered with a jurat affixed thereto."

Footnote 5:A Brady violation occurs when the prosecution knowingly puts on false testimony or withholds evidence from the defense, whether or not the defendant makes a request for such evidence. Brady v. Maryland, 373 U.S. 83, 87, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963)